**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

Case No.          -Civ-
Judge
Magistrate Judge

| | |
|---|---|
| PHILIPPE LAGACE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | COMPLAINT - CLASS ACTION |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| vs. | |
| JIANGBO PHARMACEUTICALS, INC., JIN LINXIAN, ELSA SUNG, ZILING SUN, CAO WUBO, FENG XIAOWEI, HUANG LEI, GE JIAN, MICHAEL MARKS, AND JOHN WANG, | |
| Defendants. | |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Philippe Lagace  ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Jiangbo Pharmaceuticals, Inc. ("Jiangbo" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the securities of Jiangbo between May 17, 2010 and May 31, 2011, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws.

2.      During the Class Period, Jiangbo issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's operations, financial condition, and certain financial transactions.

3.      On May 31, 2011, at 2:04 P.M. EST, trading in the Company's stock was halted by the SEC. The reason code for the halt was T12, which indicates that trading was halted pending receipt of additional information requested by NASDAQ from the Company.

4.      Subsequently, on June 7, 2011, Jiangbo filed a statement on Form 8-K with the SEC indicating that it was in receipt of a letter, attached as an exhibit thereto, from Defendants Marks and Wang announcing their immediate resignation from their positions with the Company (the "Resignation Letter").

5.      Prior to their resignation, Defendants Marks and Wang were the two independent members of the Company's three person Audit Committee.

6.      The Resignation Letter indicated that the Company received a SEC subpoena on March 26, 2011, and that the Audit Committee had attempted to undertake an independent internal investigation into certain issues raised by the SEC; the letter went on to levy a number of scathing allegations against the Company.

7.      Allegations of note include: (1) that the Company's senior management, particularly Defendant Wubo, were uncooperative with the investigation and failed to pay necessary legal and other professional fees in a timely fashion; (2) that the same refused to provide documents to the independent investigators, including employee information and bank statements and confirmations; and (3) that the same failed to provide information regarding a 200 million RMB (approximately 31 million USD) transaction between Jiangbo and an entity of an apparent related party nature.

8.      The allegations levied by the Resignation Letter have raised red flags of fraud.

9.     In particular, the allegations, enumerated more fully below, suggest that the Company has significantly less employees than it claims; that it has materially smaller cash reserves than reported on its balance sheet and/or significantly constrained access to its cash; and that there was an undisclosed 200 million RMB transaction with Hilead Biotechnology Co. – a private entity currently chaired by Defendant Wubo – of a related party nature.

10.    This disclosure of this adverse information has resulted in and/or prolonged the trading halt instituted against the Company's shares, which has rendered them virtually illiquid. As a result, both Plaintiff and the Class have been damaged. Furthermore, Plaintiff anticipates further damages will result from the disclosure of Defendants misconduct when trading in Jiangbo stock resumes, as the market price of Jiangbo stock does not yet reflect said disclosure due to the halt.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

13.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

14.    In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.    Plaintiff Philippe Lagace, as set forth in the accompanying certification, incorporated by reference herein, purchased Jiangbo securities at artificially inflated prices during the Class Period and has been damaged thereby.

16.    According to its most Form 10-K for fiscal year ended June 30, 2010 ("2010 10K"), Defendant Jiangbo Pharmaceuticals, Inc. is a Florida Corporation with its principal executive offices in Shandong Province, People's Republic of China ("PRC").  Jiangbo claims to

operate, control, and beneficially own the pharmaceutical business of Laiyang Jiangbo Pharmaceuticals Co. Ltd. ("Laiyang Jiangbo"), a PRC company that purports to research, develop, manufacture, market, and sell pharmaceutical products and health supplements in China. Laiyang Jiangbo is controlled by Jiangbo through a contractual relationship between Laiyang Jiangbo and Genesis Jiangbo Biotech Technologies Co. Ltd., a PRC company wholly owned by Jiangbo. From June 8, 2010 through the end of the Class Period, Jiangbo common stock traded on the NASDAQ Global Market under ticker symbol JGBO. Previously, from the beginning of the Class Period through June 7, 2010, Jiangbo common stock traded on the OTC Bulletin Board.

17. Defendant Jin Liuxian ("Liuxian") was the Company's Chief Executive Officer ("CEO") from July 1, 2010 through the end of the Class Period.

18. Defendant Elsa Sung ("Sung") was the Company's Chief Financial Officer ("CFO") from the beginning of the Class Period to March 31, 2011, when her resignation from said position came into effect.

19. Defendant Ziling Sun ("Ziling") was CFO of the Company from her appointment by the Board of Directors on May 12, 2011 through the end of the Class Period.

20. Defendant Cao Wubo ("Wubo") was the Company's Chairman of the Board at all relevant times herein. Wubo was also CEO of the Company from the beginning of the Class Period until his resignation from that position in June 2010.

21. Defendant Feng Xiaowei ("Xiaowei") was a director of the Company at all relevant times and a member of the Audit Committee, the Compensation Committee, and the Nominating and Corporate Governance Committee.

22. Defendant Huang Lei ("Lei") was a director of the Company at all relevant times and a member of the Nominating and Corporate Governance Committee.

23. Defendant Ge Jian ("Jian") was a director of the Company at all relevant times and a member of the Compensation Committee and the Nominating and Corporate Governance Committeee.

24. Defendants Michael Marks ("Marks") and John Wang ("Wang") were directors of the Company and independent members of its Audit Committee from the beginning of the Class

Period until their resignation from said positions on June 6, 2011, as detailed in the Resignation Letter.

25. Liuxian, Sung, Ziling, Wubo, Xiaowei, Lei, Jian, Marks, and Wang are collectively referred to hereinafter as the "Individual Defendants."

26. During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of Jiangbo and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

27. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Jiangbo, each of the Individual Defendants had access to the adverse undisclosed information about Jiangbo's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Jiangbo and its business issued or adopted by the Company materially false and misleading.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased Jiangbo during securities during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the vast majority of the Class Period, Jiangbo's common stock was actively traded on the NASDAQ Global Market.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class.  Members of the Class may be identified from records maintained by Jiangbo or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)   whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the finances, operations and management of Jiangbo; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

Class Action Complaint for Violation of the Federal Securities Laws

## **SUBSTANTIVE ALLEGATIONS**

34.     The Class Period begins on May 17, 2010, when Defendants filed their Form 10-Q for the quarterly period ended March 31, 2010 (third quarter). The 10-Q was signed by Defendant Wubo; reported that the Company had approximately 96 million USD in cash and approximately 11 million USD in cash equivalents; and that "the Company's bank balances, including restricted cash balances, exceeded government-insured limits by approximately $107,698,000" as of March 31, 2010. The report was signed by Defendant Wubo, and incorporated certifications pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 ("SOX Act") signed by Defendants Wubo and Sung.

35.     In the same 10-Q, the Company reported that it had approximately $27 million in debt relating to its November 2007 and May 2008 convertible debenture notes (the "Debentures"). As of December 2009, the Company was delinquent on its interest payments on the Debentures, and had entered into a waiver agreement with the holders of the Debentures in February 2010. As of March 31, 2010, the Company had not met the requirements of the waiver agreement and was in danger of default on the Debentures, with accrued interest and interest penalties amounting to $3,958,836.

36.     On May 20, 2010, the Company filed a statement on Form 8-K with the SEC announcing its results for the third quarter of 2010. Attached as an exhibit to the 8-K was a copy of the presentation slides used by the Company on May 17, 2010 at the CCG China Rising Investment Conference and the Murray, Carret, & Co. 2010 Life Sciences Summit.   The presentation slides indicated that Jiangbo had 1,535 employees as of May 2010, "including 425 production crew, 110 administrators, 440 full-time salespeople and 560 part-time sales people."

37.     On September 28, 2010, Jiangbo filed its 10-K for the fiscal year ended June 30, 2010. The Company reported:

(a)     $108,616,735 in cash and $104,366,116 in restricted cash;

(b)     1,494 employees, including 82 administrative staff, 412 production crew, 440 full-time salespersons and 560 part-time salespersons;

(c)     that the Company was currently delinquent in the payment of interest under the Debentures (with approximately $18 million in principal outstanding) due to the "delay in

[its] ability to transfer cash out of the PRC," and that, if it were forced to immediately repay the Debentures in the event of default, it may be forced to seek protection under the United States Bankruptcy Code.

38.    The September 2010 10-K was signed by Defendants Linxian, Sung, Wubo, Xiaowei, Lei, Jian, and Wang, and incorporated certifications pursuant to Sections 302 and 906 of the SOX Act signed by Linxian and Sung. The SOX Act certifications stated that Defendants Linxian and Sung acknowledged that:

(a)    the 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report," and;

(b)    that they had "[d]esigned such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles."

39.    On November 15, 2010, Jiangbo issued its quarterly report for the period ending September 30, 2010 (first quarter 2011). The Company reported $123,892,650 of cash and cash equivalents, and $14,135,797 in restricted cash. With respect to the Debentures, Jiangbo stated that the delinquency in interest payment was due to "the delay in its ability to transfer cash out of the PRC (partially due to the stricter foreign exchange restrictions and regulations imposed in the PRC starting in December 2008)," and that total accrued interest and related interest penalty on the Debentures amounted to $5,535,566 as of September 30, 2010. The report was signed by Defendants Liuxian and Sung, and incorporated certifications pursuant to Sections 302 and 906 of the SOX Act signed by the same.

40.    On November 16, 2010, the Company held a teleconference regarding its earnings for the first quarter 2011.  During the call, Defendant Sung indicated that the Company was delinquent on interest payment on its Debentures "due to restrictions on Company's ability to transfer cash out of the PRC," but that "management has been in close discussion with the holders

of the [Debentures]." Further on in the call, an individual indicated that he was a holder of the 2008 Debentures, but that he had not been contacted by the Company (Defendant Sung indicated that there were only two holders of the 2008 Debentures). In addition, Defendant Sung indicated that the cash position of the Company, net of liabilities (including the Debentures), was upwards of $100 million.

41.     One January 24, 2011, the Company filed a statement on Form-8K with the SEC indicating that it had entered into an agreement with Pope Asset Management, LLC ("Pope"), the majority holder of its 2007 and 2008 Debentures, in order to induce Pope to continue to waive their right to send notice of default to the Company with respect to the Debentures. The agreement provided, *inter alia*, that Pope would waive said right in return for interest payments and penalty payments in the form of Jiangbo common stock, and that Pope would extend the maturity date for the 2007 Debentures to February 28, 2011.

42.     On May 23, 2011, Jiangbo filed its quarterly report for the period ended March 31, 2011 (third quarter 2011). The Company reported $146,886,471 in cash, and $10,383,600 in restricted cash. The Company reported that it "it was unable to make the principal payment and again became delinquent on the November 2007 Debenture on March 1, 2011."

## THE TRUTH BEGINS TO EMERGE

43.     On May31, 2011, at 2 P.M. EST, the SEC instituted a trading halt on Jiangbo shares. Roughly one week later, on June 7, 2011, the Company issued a statement on Form 8-K that Defendants Marks and Wang – the independent members of the Company audit committee – had resigned from their positions as of the previous day. Attached as an exhibit to the 8-K was a letter addressed to Jiangbo's Board of Directors, and signed by Defendants Marks and Wang (i.e., the Resignation Letter).  The Resignation Letter laid out the reasons for Defendants Marks' and Wang's departure, and disclosed a slew of red flags at the Company.

44.     The Resignation Letter indicated that:

(a)     "The Company received a subpoena from the [SEC] on March 26, 2011," in response to which the Audit Committee decided "to undertake an independent internal investigation of certain issues raised by the SEC and to provide the findings of that investigation to the SEC";

(b)     The Audit Committee retained Cadwalader, Wickersham, & Taft LLP ("Cadwalader") to conduct the independent investigation, which in turn retained Ernst & Young (China) Advisory Limited ("E&Y") to provide forensic accounting services;

(c)     "[T]he conduct and statements by the Company and those controlling and advising it have demonstrated a clear and continuing lack of cooperation";

(d)     "[T]he manner and timing of the Company's payments to the Audit Committee's advisers (Cadwalader and E&Y) raise additional serious concerns regarding the veracity or correctness of banking information provided by the Company" [emphasis added];

(e)     During the course of the investigation, the Company's Controller "indicated to E&Y that certain requested documents (e.g., a list of historical employee list [sic], a list of employees' company email addresses; contact information of the Company's web-based email service provider) were not available";

(f)     However, the same Controller subsequently told E&Y "that he had the information but that [Defendant Wubo] did not agree to release these materials to Cadwalader and E&Y";

(g)     Subsequently, Jiangbo employees "informed E&Y that [Defendant Wubo] had  to approve the release of any materials to Cadwalader and E&Y";

(h)     Defendant Wubo indicated that "he remained unwilling to give E&Y information and materials relating to the Company's computer and IT information, systems and vendors, and email addresses," and that he was also "unwilling to reveal any details regarding the Company's acquisition of land use rights, or any information, including employee lists or sales information" [emphasis added];

(i)     "[Defendant Wubo] did not want to provide information regarding emails and computers, and [Defendant Wubo] did not think that supporting documents related to RMB 200 million payment needed to be provided because he believed the referenced transaction was unrelated to Jiangbo" [emphasis added];

(j)     The Manager of the Company's Materials Department "refused to leave the employee wash room in order to avoid answering E&Y's questions";

(k)      In a May 20, 2011 email, Defendant Marks requested,  under threat of resignation, that the Company provide, *inter alia*, the following information that had yet to be provided to the independent investigators:

     (1)      "List of employee's email address [sic]";

     (2)      "A list of company bank accounts (including closed bank accounts and brokerage account)";

     (3)      Bank statements, acceptance bill stubs, acceptance bill register, and Notes Payable Deposit Contract;

     (4)      "Yantai Jiangbo Pharmaceuticals' bank slips of its receipt of RMB 200 Million" [emphasis added];

     (5)      "Hilead's bank slips of its receipt of RMB 200 million, and relevant journal vouchers" [emphasis added];

     (6)      "Report on the verification of capital in relation to the RMB 200 million capital increment of Hilead" [emphasis added];

(l)      The Company continued to make pretenses about paying the professional fees of the independent investigators, but the legal and professions fees went unpaid;

(m)      After Cadwalader and the Company entered into an installment plan by which Cadwalader could receive its retainer, "[t]he first tranche of Cadwalader's April fee was paid from a personal account of an individual named [REDACTED] (the name of a cashier at Jiangbo), via internet banking" on May 25, 2011 [emphasis added];

(n)      The Company previously indicated that it did not have access to internet banking;

(o)      On May 27, 2011, Defendants Marks sent an email expressing, *inter alia*, his and Defendant Wang's "concerns about the lack of professionalism within the company over many years of delayed payments, lack of focus of senior management, [and] commitment of company resources to related parties" [emphasis added];

(p)      As of June 2, 2011, the following information and documents, among other things, had not been provided by the Company:

     (1)      "Bank statements retained by the Company for large portions of the review period relating to several bank accounts";

(2)      "Auditor's Verification Report on the capital injection in relation to the RMB 200 million capital of Hilead" [emphasis added];

(3)      "Documents relating to one of the two interest payments for its November 2007 Debenture and May 2008 Notes;

(q)      The following information and documents "were ***provided incompletely and/or raised questions regarding the thoroughness and accuracy of the Company's response***" [emphasis in original]:

(1)      "The Company purported to provide a list of empolyees' company email addresses, but included a list of only fourteen email addresses, even though the Company has 456 employees according to the current employee list" [emphasis added];

(r)      Also on June 2, the Company wired Cadwalader a portion of their retainer, which was approximately 1.8 million RMB less than what was due, and the money was wired via internet banking from an account "that was not the Company's primary account";

(s)      Defendant Marks raised serious concerns about the manner and timing of the Company's payment of legal fees, particular their origination from "either a much smaller Company account [i.e., not its primary account] at [REDACTED] or, more troubling, from a personal bank account apparently belonging to an individual employee of Jiangbo" [emphasis added];

(t)      Defendant Marks suggested that the Company "remove unilateral check approval authority from [Defendant Wubo], and instead establish check approval authority to [Defendant Jin] and select others in senior management consistent with recognized "four-eyes principles."

45.      As discussed below, the Resignation Letter raised a plethora of red flags and made disclosures of materially adverse information.

46.      Throughout the Class Period, the Company had misled investors about the number of individuals it employed. As indicated in the Company's SEC filings, summarized above, Jiangbo had approximately 1,400 employees as of May 20, 2010, "including 82 administrative staff, 412 production crew, 440 full-time salespersons and 560 part-time salespersons." However,

as disclosed by the letter, the current employee list indicates that there are less than 500 individuals employed by the Company.

47.    The Company's unwillingness to release employee e-mail information, in addition to the fact that only a mere fourteen email addresses were released during the independent investigation, further suggests that the Company materially misrepresented the size of its workforce by nearly a factor of three-to-one.

48.    Secondly, the Resignation Letter clearly shows that the Company failed to disclose a 200 million RMB transaction of a related party nature, and that there was an undisclosed "commitment of company resources to related parties."

49.    The 200 million RMB transaction referenced by the Resignation Letter was to the benefit of Hilead Biotechnology Co. ("Hilead"), a private company in the same city as Jiangbo's main operating subsidiary.

50.    Defendant Wubo is Chairman of the Board of Directors of Hilead, and was undoubtedly aware of the transfer due to his position within the two companies; and the fact that he had sole control over check issuance at Jiangbo.

51.    As a result, Jiangbo's transfer of 200 million RMB to Hilead is of an apparent related party nature. Moreover, the existence of the transfer, as well as its apparent related party nature went completely undisclosed by the Company.

52.    Thirdly, both the Resignation Letter and the Company's repeated failure to timely pay the interest and/or principle on the Debentures suggests that the Company either has drastically less cash than reported throughout the Class Period, or that it does not have access to said cash.

53.    Indeed, it is a significant and indisputable red flag that a Company with purported cash reserves of more than $100 million would continue to fail in its obligations with respect to the Debentures and thereby incur significant penalties at the expense of its shareholders.

54.    It is also a red flag that a Company with such purported cash reserves would pay professional fees from, in one reported instance, an employee's personal checking account, and in the other instance, from a non-primary bank account that has (or should have) significantly less cash than the Company's primary account.

55.     If the Company does indeed have the cash reserves that it claims, the only other possible inference is that Jiangbo (i.e., the Florida Corporation) does not have access to the assets of its main operating subsidiary, Laiyang Jiangbo (which, as indicated in the Company's most recent 10-K, has signed an equity pledge with one of Jiangbo's wholly-owned subsidiaries, thereby entitling Jiangbo to 100% of Laying Jiangbo's assets). This was undisclosed throughout the Class Period, and makes the Company's representation that it operates, controls, and beneficially owns Laiyang Jiangbo materially misleading.

56.     Lastly, the Company has made material misstatements and omissions with respect to the quality of its internal controls. As indicated by the Resignation Letter, Defendant Wubo is the only officer or director of Jiangbo that has "unilateral check approval authority." In effect, this means that Defendant Wubo – who is _not_ an officer of Jiangbo – has *de facto* dictatorial control over the Company as he is the only member of the management that can authorize payments to third parties. This is a significant and material undisclosed weakness in the Company's internal controls.

57.     The adverse information detailed herein has caused the halt of trading in Jiangbo's stock to persist, thereby damaging investors. Furthermore, Plaintiff expects that there will be significantly greater damages in the future as the current market price of Jiangbo's stock does not yet reflect said adverse information.

**Applicability of Presumption of Reliance:**

**<u>Fraud-on-the-Market Doctrine</u>**

58.     At all relevant times, the market for Jiangbo's common stock was an efficient market for the following reasons, among others:

(a)     Jiangbo's stock met the requirements for listing, and was listed and actively traded on the NASDAQ Global Market, a highly efficient and automated market;

(b)     During the class period, on average, over several tens of thousands of shares of Jiangbo stock were traded on a weekly basis, demonstrating a very active and broad market for Jiangbo stock and permitting a presumption of an efficient market;

14

(c)     As a regulated issuer, Jiangbo filed periodic public reports with the SEC and was eligible and did file short form registration statements with the SEC on Form S-3 during the Class Period;

(d)     Jiangbo regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     Jiangbo was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in Jiangbo stock at all times during the Class Period; and

(g)     Unexpected material news about Jiangbo was rapidly reflected and incorporated into the Company's stock price during the Class Period.

59.     As a result of the foregoing, the market for Jiangbo's common stock promptly digested current information regarding Jiangbo from all publicly available sources and reflected such information in Jiangbo's stock price.  Under these circumstances, all purchasers of Jiangbo's common stock during the Class Period suffered similar injury through their purchase of Jiangbo's common stock at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM

### Violation of Section 10(b) Of
### The Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

60.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     This claim is brought against Jiangbo and all of the Individual Defendants.

62.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Jiangbo's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

63.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Jiangbo's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

64.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Jiangbo as specified herein.

65.    These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Jiangbo's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Jiangbo and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Jiangbo's common stock during the Class Period.

66.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of

his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

67.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Jiangbo's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

68.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Jiangbo's common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Jiangbo's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Jiangbo common stock during the Class Period at artificially high prices and were or will be damaged thereby.

69.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Jiangbo's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Jiangbo common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

70.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

71.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

72.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

73.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of Jiangbo within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

75.     In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

76.     As set forth above, Jiangbo and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

77.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

78.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated:  July 15, 2011                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**



_____
Laurence Rosen, Esq.
(Fla. Bar No. 0182877)
lrosen@rosenlegal.com

275 Madison Avenue, 34th Floor
New York, NY  10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

Attorneys for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws

**Subject:** Confirmation of Receipt of Certification
**Date:** Saturday, June 18, 2011 6:18:02 PM ET
**From:** Administrator
**To:** lr54321@gmail.com

Dear Philippe Lagace,

We have received your certification in the Jiangbo Pharmaceuticals, Inc. class action litigation. Thank you for submitting your information. Below is a copy of your certification - please retain it for your records. If you have any questions, please feel free to contact us at 1-866-rosenlegal (866-767-3653) or via e-mail at info@rosenlegal.com.

With increasing frequency, we find that our new clients were victimized by more than one company. If you think you may have lost monies in the market due to the dishonest acts or statements of a different company and would like it to be investigated, free of charge, please email us at reportfraud@rosenlegal.com.

Sincerely,

The Rosen Law Firm P.A.

--------

CERTIFICATION

Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Jiangbo Pharmaceuticals, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Jiangbo Pharmaceuticals, Inc. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

First name: Philippe

Last name: Lagace

Address:  REDACTED

City:

State, Zip:

Email:

Phone:

The Plaintiff Certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in

order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Shares Purchased:

Purchase Date(s): 2/11/2011
Number of shares: 3300
Price per Share: 5.86



Shares Sold:



7. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except if detailed below:



I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate: yes

By clicking on the button below, I intend to sign and execute this agreement: yes

Clicked to Submit Certification in the Jiangbo Pharmaceuticals, Inc. Action

Signed pursuant to California Civil Code Section 1633.1, et seq. - Uniform Electronic Transactions Act

-------------

Confidential Information

The information in this e-mail message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (866-767-3653) and return the original message to the above e-mail address. Thank you.

-------------