UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PHILIPPE LAGACE, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br> v.<br><br>JIANGBO PHARMACEUTICALS, INC., JIN LINXIAN, ELSA SUNG, ZILING SUN, CAO WUBO, FENG XIAOWEI, HUANG LEI, GE JIAN, MICHAEL MARKS, AND JOHN WANG,<br><br>       Defendants. | Civil Action No. 11 Civ. 22556 (MGC) |

**MEMORANDUM OF LAW IN SUPPORT OF MICHAEL TROKEL'S
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, AND
<u>APPROVAL OF THE FARUQI FIRM AS LEAD COUNSEL</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ........................................................................................... 1
FACTUAL BACKGROUND ................................................................................................ 3
ARGUMENT .......................................................................................................................... 5
    I.   TROKEL SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ...................................................................................................................... 5
        A.   The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff ............................................................................................................ 5
        B.   Under The PSLRA, Trokel Should Be Appointed Lead Plaintiff ............. 7
            1.   Trokel Filed A Timely Motion ...................................................... 7
            2.   Trokel Has The Largest Financial Interest in the Relief Sought by the Class ........................................................................ 7
            3.   Trokel Meets Rule 23's Typicality and Adequacy Requirements ................................................................................... 8
    II.  THE COURT SHOULD APPROVE TROKEL'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL ................................................................ 10
CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Bhojwani v. Pistiolis*,
    06 Civ. 13761, 2007 U.S. Dist. LEXIS 52139 (S.D.N.Y. June 26, 2007) .................................. 1

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) ................................................................................................ 5

*Durgin v. Tousa, Inc.*,
    06 Civ. 61844, 2008 U.S. Dist. LEXIS 76315 (S.D. Fla. July 14, 2008) ................................. 8

*Ehlert v. Singer*,
    185 F.R.D. 674 (M.D. Fla. 1999) .............................................................................................. 6

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................... 8

*In re General Electric Sec. Litig.*,
    09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) .......................... 8

*Grand Lodge of Pa. v. Peters*,
    07 Civ. 479, 2007 U.S. Dist. LEXIS 48191 (M.D. Fla. June 22, 2007) ................................... 9

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) .............................................................................................. 7

*Lagrasta v. First Union Secs., Inc.*,
    01 Civ. 251, 2005 U.S. Dist. LEXIS 20207 (M.D. Fla. Aug. 8, 2005) ..................................... 9

*Lax v. First Merchants Acceptance Corp.*,
    97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..................................... 7

*Miller v. Dyadic Int'l, Inc.*,
    C.A. No. 07-civ-80948, 2008 U.S. Dist. LEXIS 32271 (S.D. Fla. Apr. 18, 2008) ......... *passim*

*In re Nice Sys., Ltd. Secs. Litig.*,
    188 F.R.D. 206 (D.N.J. 1999) ................................................................................................... 7

*In re Orion Secs. Litig.*,
    No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008) ................... 9

*Piven v. Sykes Enterprises, Inc.*,
    137 F. Supp. 2d 1295 (M.D. Fla. 2000) .................................................................................... 9

*In re Tronox, Inc.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................................................... 5

*Vincelli v. Nat'l Home Health Care Corp.*,
   112 F. Supp. 2d 1309 (M.D. Fla. 2000) ................................................................. 5, 6, 10

**STATUTES**

15 U.S.C. 78u-4(a)(3)(B)(ii) .............................................................................................. 5

15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I) ........................................................................... 5

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(i) ........................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)(ii) .......................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................................. 2, 6, 7

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................... 3, 10

PSLRA .................................................................................................................... *passim*

Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ............................ 2

Section 21D(a)(2) ............................................................................................................. 7

Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C.
   § 78u-4(a)(3)(B) ........................................................................................................ 1, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 42(a) ......................................................................................................... 5

Rule 23 of the Federal Rules of Civil Procedure ..................................................... 2, 7, 8

Rule 10b-5 ......................................................................................................................... 2

Rule 23 .............................................................................................................................. 9

Rule 23(a) .......................................................................................................................... 8

Rule 23(a)(4) ..................................................................................................................... 9

Movant Michael Trokel ("Trokel"), on behalf of himself and the Class defined herein, respectfully submits this memorandum of law pursuant to Section 21D(b)(3)(B) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in support of his motion for the entry of an order: (1) appointing Trokel as Lead Plaintiff for the Action (defined below); and (2) approving Trokel's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.

## PRELIMINARY STATEMENT

Presently pending in this District are two securities class actions (consolidated into the "Action")[1] brought on behalf of a putative class (the "Class") of investors who suffered damages as a result of their transactions in Jiangbo Pharmaceuticals, Inc. ("Jiangbo" or the "Company") securities during the period May 17, 2010 through and including May 31, 2011 (the "Class Period").[2] In connection therewith, movant Michael Trokel seeks to be appointed Lead Plaintiff, and to approve his respective selection of Lead Counsel.

---

[1] The cases comprising the Action are as follows: (1) Philippe Lagace, et al., v. Jiangbo Pharmaceuticals, Inc., et al., Case No. 11-22556 (MGC) (the "Lagace Action"); and (2) Tara Lewis, et al., v. Jiangbo Pharmaceuticals, Inc., et al., Case No. 11-22788 (MGC) (the "Lewis Action"). The Court consolidated the Lewis Action with related lower-numbered Lagace Action on August 31, 2011, directing all filings going forward to be filed only in Lagace Action. See Order Consolidating Cases, attached as Exhibit A to the Declaration of Emily C. Komlossy ("Komlossy Decl."), dated September 14, 2011, filed in support hereof.

[2] Minor differences exist in the class definitions in the Action. The proposed class period in the *Lagace* Action runs from May 17, 2010 through and including May 31, 2011. The proposed class period in the *Lewis* Action, however, runs between June 8, 2010, and May 31, 2011, inclusive. Plaintiff Trokel uses the longer class period for purposes of his motion. *See Miller v. Dyadic Int'l, Inc.*, C.A. No. 07-civ-80948, 2008 U.S. Dist. LEXIS 32271, at *11-12 (S.D. Fla. Apr. 18, 2008) ("[T]he Court finds that the better rule, as many other courts have held, is the rule that chooses the most inclusive class period at this early stage in the litigation.") (citing *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006); *Bhojwani v. Pistiolis*, 06 Civ. 13761, 2007 U.S. Dist. LEXIS 52139, at *14 (S.D.N.Y. June 26, 2007)).

The Action alleges violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act") and Securities Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder by Jiangbo, the Company's officers (Jin Liuxian ("Liuxian"), the Company's Chief Executive Officer ("CEO"), Elsa Sung ("Sung"), the Company's former Chief Financial Officer ("CFO"), Ziling Sun ("Ziling"), the Company's current CFO, Cao Wubo ("Wubo"), the Company's Chairman of the Board and former CEO) and the Board of Directors (Feng Xiaowei ("Xiaowei"), Huang Lei ("Lei"), Ge Jian ("Jian"), Michael Marks ("Marks") and John Wang ("Wang")).[3]

With respect to the appointment of a lead plaintiff, Congress established a presumption in the PSLRA that requires the Court to appoint as lead plaintiff the "person or group of persons" who demonstrate the "largest financial interest in the litigation" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

With total losses of $53,717.00, Trokel, to the best of counsels' knowledge, has the largest financial interest in this litigation compared to any other movant.  Trokel also satisfies Rule 23's typicality and adequacy requirements.  Trokel's claims are typical of the Class's claims because he suffered losses in his Jiangbo investments as a result of the defendants' false and misleading statements.  Further, Trokel has no conflict with the Class and will adequately protect the Class's interests given Trokel's significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel.  Accordingly, Trokel is the presumptive most adequate Lead Plaintiff.

---

[3]   The *Lagace* Action names the Company's Board of Directors as individual defendants to the Action, while the *Lewis* Action only names the Company's officers.

Lastly, if appointed Lead Plaintiff, Trokel is entitled to select, subject to the Court's approval, lead counsel to represent the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Trokel has engaged the Faruqi Firm for this purpose.  The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Trokel's motion should be granted in its entirety.

## FACTUAL BACKGROUND

Defendant Jiangbo is a Florida Corporation with its principal executive offices in Shandong Province, People's Republic of China ("PRC").  Jiangbo operates, controls, and beneficially owns the pharmaceutical business of Laiyang Jiangbo Pharmaceuticals Co. Ltd. ("Laiyang Jiangbo"), a PRC company that purports to research, develop, manufacture, market, and sell pharmaceutical products and health supplements in China.  Laiyang Jiangbo is controlled by Jiangbo through a contractual relationship between Laiyang Jiangbo and Genesis Jiangbo Biotech Technologies Co. Ltd., a PRC company wholly owned by Jiangbo.  In October 2007, Jiangbo became publicly-traded through a reverse merger, and initially traded over-the-counter on the OTC Bulletin Board.  From June 8, 2010 through the end of the Class Period, the Company's shares began trading on the NASDAQ Global Market ("NASDAQ") under ticker symbol JGBO.

In March 2011, the Company's Chief Financial Officer resigned.  The next month, on April 4, 2011, the Company reported that it had replaced its auditor.  On May 27, 2011, the Company filed an amendment to its quarterly report on Form 10-Q – filed just four days earlier – disclosing for the first time that the Securities and Exchange Commission ("SEC") had

commenced an informal investigation and requested documents from Jiangbo in December 2010, and that the Company had initiated its own parallel internal investigation in February 2011.

Following this announcement, on May 31, 2011, NASDAQ halted trading of Jiangbo stock. Subsequently, on June 7, 2011, Jiangbo filed a statement on Form 8-K with the SEC indicating that it was in receipt of a letter from Defendants Marks and Wang announcing their immediate resignation from their positions with the Company (the "Resignation Letter"). Prior to their resignation, Defendants Marks and Wang were the two independent members of the Company's three person Audit Committee. The Resignation Letter indicated that the Company received a SEC subpoena on March 26, 2011, and that the Audit Committee had attempted to undertake an independent internal investigation into certain issues raised by the SEC; the letter went on to describe a number of damaging revelations against the Company.

Allegations of note include: (1) that the Company's senior management, particularly Defendant Wubo, were uncooperative with the investigation and failed to pay necessary legal and other professional fees in a timely fashion; (2) that senior management refused to provide documents to the independent investigators, including employee information and bank statements and confirmations; and (3) that senior management failed to provide information regarding a 200 million RMB (approximately 31 million USD) transaction between Jiangbo and an entity of an apparent related-party nature. The Resignation Letter also concluded that "the manner and timing of the Company's payment to the Audit Committee's advisers (Cadwalader Wickersham & Taft LLPJ and (Ernst & Young (China) Advisory Limited) raise additional serious concerns regarding the veracity or correctness of banking information provided by the Company and regarding the Company's ability and willingness to pay for necessary costs related to the internal investigation."

The disclosure of this adverse information has resulted in and/or prolonged the trading halt instituted against the Company's shares, which has rendered the stock virtually illiquid. As a result, Movant and the Class have been damaged. As a result of defendants' false and misleading statements and omissions, Jiangbo's common stock traded at inflated levels during the Class Period. After the above revelations seeped into the market, the Company's shares were hammered by massive sales that sent Jiangbo's stock price down from its Class Period high of $10.49. This Action is the only chance Class members will have to receive compensation for being defrauded, and Trokel seeks to ensure that investors receive the maximum possible recovery Jiangbo's shares remain halted and are not actively traded on any domestic exchange.

**ARGUMENT**

**I.     TROKEL SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS**

    **A.     The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff[4]**

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(I). It provides that within 20 days of

---

[4] The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. 78u-4(a)(3)(B)(ii). *See also* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "as soon as practicable after [the consolidation] decision is rendered"). Counsel for Trokel is aware that the Court has consolidated the Action and directed all filings going forward be filed only in the *Lagace* Action caption. If additional securities class actions are subsequently filed involving common questions of law *or* fact against similar defendants, Plaintiff Trokel respectfully submits that consolidation would be appropriate before this Court as has been directed. *See* Fed. R. Civ. P. 42(a); *see also Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1312-1313 (M.D. Fla. 2000) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990)); *In re Tronox, Inc.*, 262 F.R.D. 338 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188 (S.D.N.Y. 2008) (consolidating securities class actions).

the filing of the action, plaintiffs are required to publish a notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Vincelli*, 112 F. Supp. 2d at 1314 (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members." Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice (published by a complainant);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Vincelli*, 112 F. Supp. 2d at 1314; *Ehlert v. Singer*, 185 F.R.D. 674, 678 (M.D. Fla. 1999).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Miller,* 2008 U.S. Dist. LEXIS 32271, at *9 ; *Vincelli*, 112 F. Supp. 2d at 1314.

### B. Under The PSLRA, Trokel Should Be Appointed Lead Plaintiff

As discussed below, Trokel should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Trokel holds the largest financial interest of any movant, and Trokel otherwise satisfies Rule 23's typicality and adequacy requirements.

#### 1. Trokel Filed a Timely Motion

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a securities class action complaint was required to publish notice of the complaint within twenty (20) days of its filing. Counsel for Phillipe Lagace, the first-filed action, published notice of the lead plaintiff deadline via *Marketwire* on July 16, 2011.[5] *See* Komlossy Decl., Ex. B. Consequently, any member of the proposed Class in the Action was required to seek to be appointed lead plaintiff within 60 days after publication of the notice (*i.e.*, on or before September 14, 2011). *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Thus, Trokel's motion was timely filed. Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Trokel timely signed and submitted a certification with his motion, identifying all of his relevant Jiangbo trades during the Class Period, and detailing Trokel's suitability to serve as lead plaintiff in this case. *See* Komlossy Decl., Ex. C. The PSLRA's procedural requirements have therefore been met.

#### 2. Trokel Has the Largest Financial Interest in the Relief Sought By the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[5] Publication by *Marketwire* is an adequate means for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire service." *See In re Nice Sys., Ltd. Secs. Litig.*, 188 F.R.D. 206, 215 (D.N.J. 1999); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

Although the PSLRA is silent as to the methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this District often look to three relevant factors in the inquiry: (1) the number of shares purchased during the class period; (2) the amount of the investment; and (3) the alleged loss. *See Miller*, 2008 U.S. Dist. LEXIS 32271, at *9 (citation omitted). Courts routinely analyze the loss calculation in lead plaintiff applications in terms of trading and removed losses suffered prior to the corrective disclosures. *See Durgin v. Tousa, Inc.*, 06 Civ. 61844, 2008 U.S. Dist. LEXIS 76315, at *6 (S.D. Fla. July 14, 2008) (citing cases); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) (citations omitted); *In re General Electric Sec. Litig.*, 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *11 (S.D.N.Y. July 29, 2009) (citation omitted).

Overall, Trokel purchased 10,100 shares of Jiangbo securities during the Class Period, and suffered losses of $53,717 when calculated using either a first in, first out ("FIFO") or last in, first out ("LIFO") methodology,[6] with the same amount in net expenditures.[7] *See* Komlossy Decl., Exs. D, E and F. Trokel is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3. Trokel Meets Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff satisfy Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B). When assessing potential lead plaintiffs, only Rule

---

[6] Courts have employed both the FIFO and LIFO methods for calculating a potential lead plaintiff's financial interest. *See Miller*, 2008 U.S. Dist. LEXIS 32271, at *16-17, n.5. These calculations are solely for purposes of this motion and are not meant to represent the amount of, or method of calculation of, damages that plaintiff may present at trial.

[7] For purposes of this analysis, counsel for Trokel has assigned a $0.23 per share value to Trokel's shares as of the September 9, 2011. While trading in Jiangbo stock has been halted on NASDAQ, the Company trades over-the-counter on the OTC Bulletin Board on very low volume.

23(a)'s typicality and adequacy requirements are relevant. *See, e.g., Grand Lodge of Pa. v. Peters*, 07 Civ. 479, 2007 U.S. Dist. LEXIS 48191, at *5-6 n.7 (M.D. Fla. June 22, 2007) (noting that only the typicality and adequacy elements of Rule 23 are examined at the lead plaintiff stage).

Typicality is established where each class member's claim arises from the same course of events and shares "the same essential characteristics as the claims of the class at large." *Piven v. Sykes Enterprises, Inc.,* 137 F. Supp. 2d 1295, 1306 (M.D. Fla. 2000). However, the claims of the class representative need not be identical to those of all members of the class. *In re Orion Secs. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) ("Indeed, the possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (internal quotations and citation omitted); *see also Lagrasta v. First Union Secs., Inc.*, 01 Civ. 251, 2005 U.S. Dist. LEXIS 20207, at *10 (M.D. Fla. Aug. 8, 2005).

Trokel's claims are clearly typical of the Class's claims. Trokel purchased Jiangbo common stock during the Class Period, suffered damages as a result of the Company's false and misleading statements, and possesses claims against Jiangbo and its officers and/or directors under the federal securities laws. Because the factual and legal bases of Trokel's claims are similar, if not identical, to those of the Class's claims, Trokel necessarily satisfies the typicality requirement. *See Miller*, 2008 U.S. Dist. LEXIS 32271, at *19 (investor's claims found typical where it "(a) purchased [Defendant's] securities, (b) at market prices artificially inflated as a result of Defendants' violations of the securities laws, and (c) suffered damages thereby.").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the Class." The determination of fair and adequate representation is a two-pronged test: (1) common interests between a representative and the class; and (2) a willingness and ability to vigorously prosecute the action. *See Vincelli*, 112 F. Supp. 2d at 1314. Further, the proposed lead plaintiff "must not possess interests antagonistic to those of the other class members." *Id*.

As evidenced by the representations in Trokel's certifications, his interests are perfectly aligned with -- and by no means antagonistic to -- the Class. Moreover, Trokel has selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class. As explained below in Section II, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Komlossy Decl., Ex. G. Consequently, Trokel is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Trokel respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## II. THE COURT SHOULD APPROVE TROKEL'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval. Trokel has selected the Faruqi Firm to be Lead Counsel for the Class. As reflected in the firm's resume, the Faruqi Firm possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Komlossy Decl., Ex. G. Accordingly, the Faruqi Firm is well qualified to represent the Class, and Trokel requests that the Court approve his selection of the Faruqi Firm as Lead Counsel for the putative class. *See Miller*, 2008 U.S. Dist. LEXIS 32271, at *31-32.

## CONCLUSION

For the foregoing reasons, Trokel respectfully requests that the Court: (1) appoint Trokel as Lead Plaintiff for the Action; (2) approve Trokel's selection of the Faruqi Firm as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

Dated: September 14, 2011

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: _/s/ Emily C. Komlossy_
Emily C. Komlossy (FL Bar No. 7714)
ekomlossy@faruqilaw.com
3595 Sheridan Street, Suite 206
Hollywood, Florida 33021
Tel: 954-239-0280
Fax: 954-239-0281

Antonio Vozzolo
Richard W. Gonnello
Francis P. McConville
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: avozzolo@faruqilaw.com
   rgonnello@faruqilaw.com
   fmcconville@faruqilaw.com

*Attorneys for Plaintiff Trokel*