UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-22556-CIV-COOKE/TURNOFF

| | |
|---|---|
| In Re: JIANGBO PHARMACEUTICALS, INC. SECURITIES LITIGATION | CLASS ACTION |
| _____/ | |

## DEFENDANTS' FROST, PLLC AND FRAZER, LLP'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendants, FROST, PLLC and FRAZER, LLP., (hereinafter "Defendants"), by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and L.R. 7.1, *Local Rules for the Southern District of Florida*, hereby move this Court for the entry of an Order Dismissing the Amended Complaint (D.E. 43), and in support thereof state as follows:

### BACKGROUND[1]

FROST, PLLC (hereinafter "Frost")[2] and FRAZER, LLP (hereinafter "Frazer")[3] have been sued in the subject class-action lawsuit for one count for Violation of Section 10(b) of the Exchange Act and Rule 10b-5. According to the Complaint, the relevant "Class," is alleged to be all those persons who purchased or otherwise acquired Jiangbo's securities on the open market between June 8, 2010 and May 31, 2011 (the "class period"), and who were damaged as result of the actions of these Defendants. *Compl.* at ¶ 1.

The Complaint pleads that said Defendants were retained to serve as the Company's

---

[1] For a more complete recitation of the facts and background of this lawsuit, the Defendants refer the Court to Defendant Elsa Sung's Motion to Dismiss (D.E. # 51), which the Defendants adopt in relevant part.
[2] Frost did not perform any work on any of the Frazer clients, including Jiangbo, nor did Frost derive any fees from such work. Frost is not a proper party to the lawsuit.
[3] Frazer is also not a proper party to the lawsuit. The proper party is Frazer-Frost LLP and its predecessor and successor entities ("Moore Stephens Wurth Frazer and Torbet, LLP ("MSWFT").

principal accountant to audit the Company's financial statements. *Compl.* at ¶ ¶ 89, 90. The Defendants are alleged to have notified Jiangbo that the Defendants had chosen not stand for re-appointment as the Company's independent auditor on April 4, 2011. *Compl.* at ¶ 20.

The Complaint alleges that the Defendants audited Jiangbo's financial statements filed with the SEC on Form 10-K on September 28, 2009 and September 29, 2008. Complaint at ¶ 96. Yet, there do not appear to be any allegations that Defendants breached any duties as result of such audit opinions in 2008 and 2009.

The primary basis for Plaintiffs' Complaint appears to stem from the issuance of the Defendants' allegedly "clean," audit opinion on the Company's 2010 Form 10-K. *Compl.* at ¶ 95.

The Complaint alleges a series of events, which occurred during the approximate 4-month time-period prior to the notice provided by these Defendants that they did not intend to stand for re-appointment as the independent auditors for Jiangbo. This sequence of events gives rise and appears to form the factual basis for Plaintiffs' suspicion and belief that improprieties must have occurred. The relevant timeline of events as pled in the Complaint allege the following:

1. Jiangbo's receipt of a letter from the SEC, which requested the Jiangbo to provide some documents <u>December of 2010 </u>(*Compl.* at ¶ 122);

2. Jiangbo's entry into a Waiver Agreement with its creditors in <u>January of 2011</u> where delinquent interest and associated penalties were alleged to have been exchanged for stock of the company (*Compl.* at ¶ 123);

3. Jiangbo's disclosure of the above-referenced Waiver Agreement on <u>January 21, 2011</u>. *Compl.* at ¶ 123;

Case No. 11-22556-CIV-COOKE/TURNOFF

4. An Audit Committee Investigation commencing in <u>February of 2011</u>. *Compl.* at ¶ 125;

5. The resignation of Jiangbo's CFO disclosed on March 18, 2011. *Compl.* at ¶ 127;

6. The SEC informed Jiangbo of the commencement of a formal investigation of Jiangbo on March 26, 2011. *Compl.* at ¶ 129;

7. The notice disclosed by these Defendants that they did not intend to stand for re-appointment as Jiangbo's independent auditors on April 4, 2011. *Compl.* at ¶ 130.

Plaintiffs believe that the disclosure by these Defendants that they had ceased their relationship with Jiangbo "…provided further grounds for concern regarding the accuracy of the Company's financial reporting and the adequacy of internal controls." *Compl.* at ¶ 131.

Thereafter, on May 23, 2011, after Defendants no longer had any role with Jiangbo, Plaintiffs contend that the disclosure of Jiangbo's default on its debts and the potential for litigation resulted in NASDAQ halting the trading of the company on May 31, 2011 at $3.08 per share. *Compl.* at ¶ ¶ 132, 139.

Plaintiffs allege that the decline in stock value was due in part to 1) NASDAQ's determination to delist Jiangbo on July 26, 2011, due to Jiangbo's failure to cooperate with an independent audit investigation (*Compl.* at ¶ 142); and the failure of Jiangbo to respond to NASDAQ's request and Jiangbo's virtual disappearance from this lawsuit. *Compl.* at ¶ ¶ 143, 144. This alleged failure by Jiangbo to cooperate with an independent audit investigation and to adequately respond to requests from NASDAQ and their failure to

respond to the lawsuit, allegedly led to a precipitous decline in the company's stock, on August 4, 2011, when trading opened at $0.25 per share.

Yet, despite Jiangbo's alleged failure to cooperate with the independent audit investigation, NASDAQ, and this lawsuit, all of which occurred after these Defendants no longer had any role with Jiangbo, and the resulting decline of the stock price thereafter in 2011, Plaintiffs have claimed their damages have been proximately caused by the actions of these Defendants with respect to the issuance of the "clean" audit opinion in 2010. As a result of the stock's decline and as result of their suspicions and belief, Plaintiffs allege that the 2010 "clean" audit opinion did not meet GAAP standards. The company's decline in stock value purportedly provides the basis for the Plaintiffs' damages.

For the following reasons, the Complaint is without merit with respect to the claims alleged against these Defendants and fails to sufficiently plead a cause of action under law.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### a. LEGAL STANDARD

This Court is well aware of the standard of review for deciding a Motion to Dismiss. When considering a Motion to Dismiss, a court must liberally construe, and accept as true, factual allegations in complaint and reasonably deductible inferences therefrom, but need not accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party. *See W.R. Townsend Contracting, Inc. v. Jensen Civil Const., In*c., 728 So.2d 297 (Fla. 1st DCA 1999)(citing *Response Oncology, Inc. v. Metrahealth Insurance Co*., 978 F.Supp. 1052, 1058 (S.D.Fla.1997).

When ruling on a Motion to Dismiss, the Court may consider not only the Complaint but also exhibits to it. See *Grossman v. Nationsbank, N.A*. 225 F.3d 1228, 1231 (11th.Cir.2000).

A 12(b)(6) motion tests the facial sufficiency of the claim for relief. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1368-69 (11th Cir. 1997). The court may dismiss a complaint pursuant to Rule 12(b)(6) if the Federal Rules of Civil Procedure "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, (2009).

Additionally, when ruling on a Motion to Dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a Court must limit its consideration to the Complaint, the written instruments attached to it as exhibits, and documents incorporated into the Complaint by reference, and matters of which a Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *See also Taylor v. City of Riviera Beach*, 801 So.2d 259, 262 (Fla. 4th DCA 2001).

## ARGUMENT

**I.   THE COURT SHOULD TAKE JUDICAL NOTICE OF JIANGBO'S SEC FILINGS IN CONSIDERATION OF THIS MOTION TO DISMISS.**

The primary basis for Plaintiffs' Complaint appears to stem from the issuance of the Defendants' allegedly "clean," audit opinion on the Company's 2010 Form 10-K. *Compl*. at ¶ 95. The Plaintiffs' claim that the audit opinion "…did not present fairly the consolidated financial position of Jiangbo…." *Compl*. at 159(d). The Plaintiffs claim Jiangbo's Quarterly Statements from 2010 and 2011 also contained misstatements but these allegations are not apparently directed against said Defendants.

Case No. 11-22556-CIV-COOKE/TURNOFF

In their prior Motion to Dismiss, Defendant Sung filed the 2010 Form 10-K and requested the Court to take judicial notice thereof. Likewise, these Defendants request this Court to take judicial notice thereof, when considering the below arguments for dismissal. See *Bryant v. Avado Brands, Inc.* 187F.3d 1271, 1277, (11th.Cir. 1999) (holding Court may judicially notice relevant documents legally required by and publicly filed with Securities and Exchange Commission (SEC) at motion to dismiss stage).

### II. DEFENDANTS ADOPT THE ARGUMENTS AND AUTHORITY FOR DISMISSAL AS PREVIOUSLY SET FORTH IN DEFENDANT ELSA SUNG'S MOTION TO DISMISS (D.E. #51) IN RELEVANT PART AND INCORPORATE BY REFERENCE ALL EXHIBITS FILED IN SUPPORT OF SUNG'S MOTION

The Complaint alleges one count against these Defendants for securities fraud under Section 10(b) of the Securities Exchange Act. This same count is directed against the officers of the company, Jiangbo, including Defendant Elsa Sung. Defendants hereby adopt all relevant arguments and legal authority filed in support of dismissal as set forth previously by Defendant Sung in her Motion (D.E. #51), which needs not be restated herein.

Plaintiffs' claims against these Defendants with respect to their improper certification of Jiangbo's alleged false and misleading statements with respect to Jiangbo's cash and accounts receivable accounts; the understated allowance for doubtful accounts resulting in overstated net income; the failure to exercise due professional care; motive to commit fraud; and scienter allegations (*Compl*. at ¶ ¶ 194-256) are subject to dismissal for the reasons and legal authority previously set forth in Defendant Sung's Motion to Dismiss, including but not limited to the following arguments and grounds[4]:

---

[4] For a recitation of the argument and authority in support of such grounds, the Defendants refer the Court to Defendant Sung's Motion to Dismiss (D.E. 51).

Case No. 11-22556-CIV-COOKE/TURNOFF

    **1.**    **Plaintiffs' Claims Lack the Necessary Particularity and Fail to Sufficiently Plead Facts Demonstrating that the Challenged Statements Were False**

        **A.**    **Plaintiffs' Claim that Jiangbo's Cash Balances Were Overstated Is Not Plead with the Requisite Particularity.**

        **B.**    **The Amended Complaint Fails to State a Claim Based Upon Overstated Accounts Receivable.**

    **2.**    **Plaintiffs have not Pled Facts Giving Rise to a Strong Inference that the Defendants acted with Scienter**

    **3.**    **Plaintiffs have failed to state a claim against these Defendants for Primary Liability under Section 10(b)**

**III.**    **PLAINTIFFS' CLAIMS THAT THE DEFENDANTS' ALLEGED MISSTATEMENTS PROXIMATELY CAUSED PLAINTIFFS' DAMAGES ARE CONTRADICTED BY THE SEC FILINGS BY JIANGBO AND OTHER ALLEGATIONS WITHIN THE COMPLAINT AND THEREFORE FAIL TO STATE A CAUSE OF ACTION.**

As stated before, to state a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934, a plaintiff must show: (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiff justifiably relied; and (5) that proximately caused the plaintiffs injury. Br*yant,* 187 F,3d at 1281. Congress significantly heightened the pleading standards for Section 10(b) claims when it passed the PSLRA. First, the plaintiff must identify "each statement alleged to have been misleading" and provide the specific reasons why each statement was misleading. 15 U.S.C. § 78u-4(b)(1). Second, for each alleged misrepresentation or omission, the plaintiff **must** "state with particularity the facts giving rise to a strong inference that the defendants acted with the required state of mind [á. e., scienter]," 15 U.S.C, § 78u-4(b)(2).

Here, Defendants are alleged to have stated in their audit opinion:

> In our opinion, the consolidated financial statements referred to above present fairly in all materials respects the consolidated financial position of Jiangbo Pharmaceuticals, IN., and Subsidiaries as of June 30, 2009, and 2008, and the consolidated results of its operations and its cash flows for each of the years in the three-year period ended June 30, 2010 and in comformity with accounting principles generally accepted in the United States. *Compl* at ¶ 156.

Plaintiffs contend these statements were untrue because the financial statements did not present fairly the consolidated financial position of Jiangbo. *Compl*. at ¶ 159(d). Plaintiffs further contend that "Without the materially false misleading unqualified audit opinion, the fraud alleged could not have been perpetuated by the other Defendants." *Compl*. at ¶ 194.

However, the allegations are clearly refuted by the 2010 Form 10-K, which properly disclosed the inherent risks with Jiangbo as set forward by the company, and which risks allegedly did come to fruition, in part, and were the cause of the Plaintiffs' damages: namely being, the decline in Jiangbo's stock price.

As the Court can see, the 2010 Form 10-K, which was filed with the SEC, contains more than (17) pages of Risk Factors, related to Jiangbgo. *10-K* at pp. 17-34. These risks included but were not limited to "Risks Related to Doing Business in China,"; "Risks Related Corporate Structure;" and "Risks Related to Our Convertible Debentures and Convertible Notes."

In fact, the 2010 10-K Form disclosed that Jiangbo was delinquent in the payment of interest under both the "2007 Notes," and the "2008 Notes." *10-K* at p. 30. The 10-K Form also disclosed the potential for the respective holders of notes to demand acceleration of payment, which would could lead to "cross-default," on another series of notes, which could lead to Jiangbo being "…forced to seek protection under the U.S. Bankruptcy Code." The 2010 10-K Form also disclosed the existence of pending deadlines for repayment of the outstanding

principal amount of the 2007 Notes together with all accrued interest and penalties. Jiangbo expressly stated in its disclosures:

> While we believe that we will be able to timely and successfully repay or refinance the 2007 Notes, *there can be no assurance that we will be able to do so*. In the event that we are unable to repay the 2007 Notes, when due, the required holders of the 2008 Notes may deliver an acceleration notice to the Company with respect to the 2008 Notes. In the event that we are unable to timely repay the 2007 Notes and/or the 2008 Notes, we may be forced to seek protection under the United States Bankruptcy Code. *2010 10-K Form at p. 30.*

Likewise, the 10-K Form disclosed that the market price for Jiangbo stock "…may be volatile and the volatility in our common share price may subject Jiangbo to securities litigation." Further, the "Risk Related to Doing Business in China," specifically detailed foreign exchange restrictions, which could impede or prevent the distribution of profits and the proceeds from reduction in capital or from engaging in the transfer of funds outside of China. *10-K Form at p. 24*. In particular the disclosures warned that Jiangbo had no control over the Chinese entity, Laiyang Jiangbo, even though it relied on Laiyang Jiangbo to control and operate their business. The disclosures further warned of the existence of "…substantial uncertainties regarding the interpretation and application of PRC laws and regulations governing our business…" The disclosures warned; "For example, our financial condition and results of operations may be adversely affected by government control over capital investments…" *10-K Form at p. 25.*

Ultimately, the above risks, as disclosed on Jiangbo's 2010 10-K Form, and as allegedly certified by the auditors, came to fruition, in part as Jiangbo allegedly entered into a Waiver Agreement in January 2011, which occurred several months after the issuance of the Defendants' allegedly clean audit opinion for the 2010 10-K. As a result of the occurrence and disclosure of this Waiver Agreement, Plaintiffs contend that Jiangbo's shares declined 9.2% over the following two trading days. *Compl*. at ¶ 229. Plaintiffs allege that the Waiver Agreement

(*Compl.* at ¶ 229) and the subsequent default by Jiangbo on its 2007 Notes and 2008 Notes in May of 2011 (*Compl.* at ¶ 234), and the resulting decline in Jiangbo's stock price, were damages proximately caused by the issuance of Defendants' clean audit opinion. *Compl.* at ¶¶ 226-241.

However, and as set forward above, the potential for Jiangbo's default on the loan notes and the volatility in Jiangbo's stock price were risks, which were expressly discussed and disclosed in Jiangbo's financial documents, including the 2010 10-K Form, and allegedly certified by these Defendants in their audit opinion.

Accordingly, the subsequent events such as the formation of the Waiver Agreement and subsequent default by Jiangbo, all of which are alleged to have occurred after the issuance of the Defendants' clean audit opinion could not have been proximately caused by the alleged misstatements of these Defendants given that 1) these events occurred after the audit opinion was issued by the Defendants; and 2) the potential for these risks with respect to Jiangbo's delinquent loan payments, the risk for the potential for default, the risk of foreign currency restrictions, and the risk resulting in the volatility and potential for decline of the stock price, all were expressly disclosed by Jiangbo on the 2010 10-K Form, thereby providing no basis for the Plaintiffs' claims that their damages were proximately caused by the alleged misstatements of these Defendants, and thereby providing additional grounds for dismissal on the basis of a lack of proximate causation with respect to the claims alleged against these Defendants.

Finally, Plaintiffs allege the Defendants did not exercise professional care regarding its audit procedures in light of Jiangbo's admitted significant internal control deficiencies disclosed in the Company's Fiscal 2010 10-K Form. *Compl.* at ¶ 196. However, the Defendants expressly stated in their audit opinion "The company is not required to have, nor were we engaged to perform, an audit of its internal control over financial reporting." See Form 10-K and *Compl.* at ¶

Case No. 11-22556-CIV-COOKE/TURNOFF

156. Accordingly, Plaintiffs' claims with respect to the Defendants' alleged breach of duty or failure to exercise due care is expressly refuted and contradicted by the Plaintiffs' own allegations, which pleads that Defendants owed no such duty with respect to internal control.

WHEREFORE, Defendants, FROST, PLLC and FRAZER, LLP, respectfully request this Court to enter an Order to dismiss all claims with respect to these Defendants, and to grant such further relief as the court deems appropriate and just.

Dated 24th day of January, 2012.

 s/ Blake Sando _____
Blake Sando (FBN: 939293)
E-mail: blake.sando@csklegal.com
COLE, SCOTT & KISSANE, P.A.
9150 South Dadeland Boulevard, Suite 1400
Miami, FL 33156
Tel:     305-350-5365
Fax:     305-373-2294
Attorney for Defendants, FROST, PLLC
and FRAZER, LLP.

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission or Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

 s/ Blake Sando _____
Blake Sando (FBN: 939293)
E-mail: blake.sando@csklegal.com
COLE, SCOTT & KISSANE, P.A.
9150 South Dadeland Boulevard, Suite 1400
Miami, FL 33156
Tel:     305-350-5365
Fax:     305-373-2294
Attorney for Defendants, FROST, PLLC
and FRAZER, LLP.

Case No. 11-22556-CIV-COOKE/TURNOFF

# SERVICE LIST

In Re: JIANGBO PHARMACEUTICALS, INC. SECURITIES LITIGATION
CASE NO. 11-22556-CIV-COOKE/TURNOFF
United States District Court, Southern District of Florida

Christopher S. Polaszek
(Fla. Bar No.: 0116866)
Email: cpolaszek@milberg.com
MILBERG LLP
201 North Franklin Street, Suite 3200
Tampa, FL 33602
Tel.: 813-367-5713
Fax: 561-892-8164

Kristi Stahnke McGregor
(Fla. Bar No.: 0732931)
Email: kmcgregor@milberg.com
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Tel.: 212-594-5300
Fax: 212-868-1229

Ethan D. Wohl
(Fla. Bar No.: 982210)
Email: ewohl@wohlfructer.com
WOHL & FRUCHTER LLP
570 Lexington Avenue, 16th Floor
New York, NY 10022
Tel.: 212-758-4000
Fax: 212-758-4004
*Attorneys for lead Plaintiffs and the Proposed Class*

Tracy Nichols
(Fla. Bar No.: 454567)
tracy.nichols@hklaw.com
Louise McAlpin
(Fla. Bar No.: 983810)
louise.mcalpin@hklaw.com
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3000
Miami, FL 33131
Tel: 305-374-8500
Fax: 305-789-7799
*Attorneys for Defendant Elsa Sung*

**COLE, SCOTT & KISSANE, P.A.**
DADELAND CENTRE II - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX