UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 11-22556-Civ-COOKE/TORRES**

In re JIANGBO PHARMACEUTICALS,
INC. SECURITIES LITIGATION        <u>Class Action</u>

_____ /

**LEAD PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AS TO WUBO
CAO AND LINXIAN JIN, CLASS CERTIFICATION FOR PURPOSES OF
DEFAULT JUDGMENT ONLY, AND APPROVAL OF COLLECTION
<u>AGREEMENT, WITH INCORPORATED MEMORANDUM OF LAW</u>**

Kristi Stahnke McGregor
(Florida Bar No. 0732931)
**MILBERG LLP**
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
E-mail:  kmcgregor@milberg.com
Ethan D. Wohl
(Florida Bar No. 982210)
**WOHL & FRUCHTER LLP**
570 Lexington Avenue, 16th Floor
New York, NY  10022
Telephone:  (212) 758-4000
Facsimile:  (212) 758-4004
E-mail:  ewohl@wohlfructer.com

*Attorneys for Lead Plaintiffs
and the Proposed Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................... iii

INDEX OF EXHIBITS .............................................................................................. vii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

A.     Background Regarding Jiangbo and the Claims Asserted in this Action ............................ 2

B.     Procedural History ................................................................................................. 3

ARGUMENT ............................................................................................................... 5

I.     ENTRY OF DEFAULT JUDGMENT AGAINST THE INDIVIDUAL
DEFENDANTS IS WARRANTED ........................................................................... 5

    A.     The Individual Defendants Were Properly Served and Failed to Appear .............. 6

    B.     The Court has Personal Jurisdiction Over the Individual Defendants ................... 6

    C.     Default Judgment is Warranted as to Liability ...................................................... 7

         1.     Material Misrepresentations .......................................................................... 7

         2.     Scienter ...................................................................................................... 8

         3.     Reliance ..................................................................................................... 10

         4.     Loss Causation ........................................................................................... 10

         5.     Control Person Liability .............................................................................. 11

    D.     Determination of Damages .................................................................................. 12

         1.     Standard .................................................................................................... 12

         2.     Damages Calculation .................................................................................. 12

         3.     Evidentiary Hearing On Damages is Not Required .................................... 13

II.     CERTIFICATION OF THE CLASS FOR PURPOSES OF DEFAULT
JUDGMENT ONLY IS WARRANTED ................................................................... 13

    A.     The Proposed Class Action Satisfies the Requirements of Rule 23(a) ................ 15

         1.     Numerosity ................................................................................................ 15

         2.     Commonality .............................................................................................. 15

         3.     Typicality .................................................................................................. 15

        4.     Adequacy ................................................................................................16

   B.    The Proposed Class Action Satisfies the Requirements of Rule 23(b)(3) ............17

        1.     Predominance....................................................................................17

        2.     Superiority ........................................................................................19

III.    APPROVAL OF THE COLLECTION AGREEMENT IS WARRANTED....................19

CONCLUSION ......................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*AAL High Yield Bond Fund v. Ruttenberg,*
    229 F.R.D. 676 (N.D. Ala. 2005)..........................................................................18

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
    398 F. Supp. 2d 244 (S.D.N.Y. 2005)..................................................................11

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..............................................................................................17

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,*
    133 S. Ct. 1184 (2013)..........................................................................................10

*Appleyard v. Wallace,*
    754 F.2d 955 (11th Cir. 1985) ..............................................................................15

*Bacon v. Stiefel Laboratories, Inc.,*
    275 F.R.D. 681 (S.D. Fla. 2011)..........................................................................15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
    No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)........................11

*Basic, Inc. v. Levinson,*
    485 U.S. 224 (1988)..............................................................................................17

*Brown v. City of Detroit,*
    No. 10-12162, 2012 WL 4470433 (E.D. Mich. Sept. 27, 2012)...........................14

*Cammer v. Bloom,*
    711 F. Supp. 1264 (D.N.J. 1989) ....................................................................17, 18

*In re Checking Account Overdraft Litig.,*
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................20

*Cheney v. Cyberguard Corp.,*
    213 F.R.D. 484 (S.D. Fla. 2003)..........................................13, 16, 17, 18, 19

*Due Process, Ltd. v. Alternative Debt Servs., Inc.,*
    No. 3:03CV580/MCR/MD, 2007 WL 1428661 (N.D. Fla. May 14, 2007) ..........12

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)................................................................................................7

*Freudenberg v. E*Trade Fin. Corp.,*
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................................................................11

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ...................................................................................10

*In re Int'l Telemedia Associates, Inc.*,
  245 B.R. 713 (Bankr. N.D. Ga. 2000) .........................................................................6

*In re JDN Realty Corp. Sec. Litig.*,
  182 F. Supp. 2d 1230 (N.D. Ga. 2002) ......................................................................11

*Katz v. MRT Holdings, LLC*,
  No. 07-61438-CIV, 2008 WL 4725284 (S.D. Fla. Oct. 24, 2008) ...........................14

*Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*,
  ___ F.3d ___, 2014 WL 3844070 (11th Cir. Aug. 6, 2014) .....................................17

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
  No. 11-cv-3658-SAS (S.D.N.Y.) ..........................................................................12, 13

*Middlesex Ret. Sys. v. Quest Software, Inc.*,
  527 F. Supp. 2d 1164 (C.D. Cal. 2007) .......................................................................9

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ...................................................................................8

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) ...................................................................................20

*Norfolk Cnty. Ret. Sys. v. Ustian*,
  No. 07 C 7014, 2009 WL 2386156 (N.D. Ill. July 28, 2009) ......................................9

*Pawar v. Draseena Funds Grp., Corp.*,
  No. CIV.A. 10-2240, 2011 WL 3359679 (E.D. Pa. Aug. 4, 2011) .............................5

*In re Physician Corp. of Am. Sec. Litig.*,
  No. 97-3678-CIV, 2003 WL 25820056 (S.D. Fla. May 21, 2003)...........................15

*In re Recoton Corp. Sec. Litig.*,
  248 F.R.D. 606 (M.D. Fla. 2006)................................................................................15

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................................10

*Rosky v. Farha*,
  No. 07-cv-1952-T-26MAP, 2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ..............9

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
  1:11-22855-CIV, 2013 WL 3295951 (S.D. Fla. Apr. 19, 2013)..................................7

*Salam Jeans Ltd. v. Regions Bank*,
 No. 07-21603-CIV, 2010 WL 1223778 (S.D. Fla. Mar. 29, 2010) ........................................12

*Schultz v. Applica Inc.*,
 488 F. Supp. 2d 1219 (S.D. Fla. 2007) ...................................................................................11

*In re Scientific Atlanta, Inc. Sec. Litig.*,
 754 F. Supp. 2d 1339 (N.D. Ga. 2010) ...................................................................................11

*SEC v. Smyth*,
 420 F.3d 1225 (11th Cir. 2005) ...............................................................................................13

*Shamrock Navigation Corp. v. Industria Naval Do Ceara S/A*,
 No. 10-61886-CIV, 2012 WL 1021822 (S.D. Fla. Mar. 27, 2012) ...........................................7

*Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co., Ltd.*,
 No. 1:12-CV-20626, 2012 WL 2873733 (S.D. Fla. June 29, 2012)....................................5, 13

*Taverna Opa Trademark Corp. v. Ismail*,
 No. 08-20776-CIV, 2010 WL 1838384 (S.D. Fla. May 6, 2010)............................................13

*Tyco Fire & Sec., LLC v. Alcocer*,
 218 F. App'x 860 (11th Cir. 2007) .............................................................................................5

*United States v. APS Contracting, Inc.*,
 No. CIV. 11-779-KMW, 2013 WL 3465192 (D.N.J. July 10, 2013) ......................................12

*United States v. Blakey*,
 960 F.2d 996 (11th Cir. 1992) ..................................................................................................10

*United States v. Kennard*,
 472 F.3d 851 (11th Cir. 2006) .....................................................................................................9

*Waterford Twp. Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*,
 No. 08-CIV-22572-Cooke, 2010 WL 1332574 (S.D. Fla. Mar. 30, 2010).................................8

**FEDERAL STATUTES AND RULES**

SEC Rule 10b-5, 15 C.F.R. § 240.10b-5 ............................................................................7, 10, 11

11 U.S.C. § 362...................................................................................................................................5

Fed. R. Civ. P. 4(f)(3) ....................................................................................................................4, 6

Fed. R. Civ. P. 23 ..........................................................................................1, 3, 13, 14, 15, 17, 20

Fed. R. Civ. P. 55 ....................................................................................................................1, 5, 13

Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b)....................................7, 8, 11

Securities Exchange Act of 1934, Section 20(a), 15 U.S.C. § 78t(a) ............................................11

## <u>INDEX OF EXHIBITS</u>

| <u>Document</u> | <u>Exhibit Number</u> |
|---|---|
| Letter from Bruce A. Friedman to the Office of Risk Management at Jiangbo Pharmaceuticals, Inc., dated January 4, 2012 [ECF No. 106, Ex. A to Ex. 1] | 1 |
| Agreed Order Granting Securities Plaintiffs' *Expedited* Motion for Relief from Agreed Order on Stay Relief Motion, *In re Jiangbo Pharms. Inc.*, No. 13-15624-BKC-RBR (Bankr. S.D. Fla.), entered August 4, 2014 [ECF No. 131] | 2 |
| Report of Cynthia L. Jones, CFA, dated September 26, 2014 | 3 |
| Order Entering Default Judgment, *In re Longtop Fin. Techs. Ltd. Secs. Litig.*, No. 11-cv-3658-SAS (S.D.N.Y.), entered November 14, 2013 [ECF No. 164] | 4 |
| Collection Agreement between Yongji Duan and Co-Lead Counsel for the Proposed Class, dated as of August 12, 2013 | 5 |
| Biographical and career information regarding Yongji Duan from Bloomberg Law, accessed September 26, 2014 | 6 |
| Summary biographical and career information regarding Yongji Duan from the online biographical database China Vitae (www.chinavitae.com), accessed September 26, 2014 | 7 |

Lead Plaintiffs Christopher Brophy and Tara Lewis ("Lead Plaintiffs") respectfully move this Court (1) pursuant to Rule 55(b)(2),[1] for a default judgment as to liability and damages against Defendants Wubo Cao ("Cao") and Linxian Jin ("Jin") (together, "Individual Defendants"); (2) pursuant to Rule 23 for an order certifying this action as a class action, certifying Lead Plaintiffs as Class Representatives, and designating Milberg LLP ("Milberg") and Wohl & Fruchter, LLP ("Wohl & Fruchter") as Co-Class Counsel; and (3) for approval of a collection agreement (the "Collection Agreement") to pursue collection efforts in the People's Republic of China ("China" or the "PRC") on behalf of the Class (as defined below).

## PRELIMINARY STATEMENT

Jiangbo Pharmaceuticals, Inc. ("Jiangbo" or the "Company") was a Florida corporation whose operations were located in the PRC and whose shares were traded in the United States on the NASDAQ Stock Market ("NASDAQ") during the period June 8, 2010 through May 31, 2011, inclusive (the "Class Period").

Following the commencement of an investigation by the Securities and Exchange Commission (the "SEC"), the independent members of the audit committee of Jiangbo's board of directors resigned and publicly documented management's obstruction of their investigation into the matters raised by the SEC.

Jiangbo's senior management, led by the Individual Defendants, then wholly abandoned their U.S. legal and financial obligations, allowed Jiangbo's shares to be delisted from NASDAQ, defaulted on the reporting mandated by the Securities Exchange Act of 1934 (the "Exchange Act"), permitted Jiangbo to default in this action, and allowed the Company to be administratively dissolved by the State of Florida and later placed into bankruptcy by creditors.

---

[1] References to "Rules" are to the Federal Rules of Civil Procedure.

These events resulted in Jiangbo's publicly-traded shares – worth over $100 million in June 2010 – being rendered all but valueless less than a year later.

Lead Plaintiffs now seek to pursue their remedies against the principal architects of the fraud – Cao and Jin – by obtaining default judgments against them and pursuing collection of those judgments in China.  As further explained below, certification of the Class is a prerequisite for entry of a default judgment in favor of the Class.

## STATEMENT OF FACTS

**A.    Background Regarding Jiangbo and
the Claims Asserted in this Action**

Jiangbo was a Florida corporation that served as a holding company for a pharmaceutical business located in the PRC.  ¶¶ 9-10.[2]  Jiangbo's existence as a U.S. publicly-traded company began in 2007, when Laiyang Jiangbo Pharmaceutical Co., Ltd. ("Laiyang Jiangbo"), a Chinese company, executed a reverse merger with a U.S. publicly-traded shell company.  ¶¶ 11-14.

Jiangbo's shares began trading on the NASDAQ on June 8, 2010, and peaked at $10.49 per share, giving the Company a market capitalization of approximately $130 million.  ¶¶ 15, 205.  In December 2010, just six months after Jiangbo became listed on the NASDAQ, the SEC commenced an investigation into Jiangbo's financial reporting.  ¶ 16.  On May 31, 2011, less than a year after its shares were first listed, NASDAQ halted trading in Jiangbo shares.  ¶ 21.

On June 7, 2011, Jiangbo issued a Form 8-K disclosing the resignation of the independent members of its Audit Committee, detailing management's extensive non-cooperation with their internal investigation, and challenging the accuracy of Jiangbo's financial reporting.  ¶¶ 22-23. On July 26, 2011, NASDAQ issued a letter to the Company, advising that its shares would be

---

[2]    References to "¶ __" are to the Consolidated Second Amended Complaint filed August 15, 2012 [ECF No. 101].

delisted.  The delisting became effective on August 4, 2011.  ¶¶ 119-120.  Following the filing of a Form 8-K on August 16, 2011, Jiangbo ceased complying with its reporting obligations under the Exchange Act.  ECF No. 66, at 12.  The Company was administratively dissolved by the Florida Division of Corporations on January 18, 2012.  ¶ 68.  As described in more detail below, involuntary bankruptcy proceedings were later commenced against the Company by its creditors.

**B.**      <u>**Procedural History**</u>

Lead Plaintiff Tara Lewis commenced her action on August 2, 2011 and served copies of the summons and complaint on Jiangbo, the Individual Defendants, and the Company's former CFO and then-registered agent, Elsa Sung ("Sung"), on August 9, 2011.  ECF No. 80, at 2.

On August 30, 2011, one of Lead Plaintiffs' attorneys received an email from outside counsel representing the Company, stating that efforts were being made to obtain counsel to represent the Company and its directors and officers in this action.  *Id*. at 2-3 and Ex. A thereto.

The Company's insurance carrier, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), has also directly stated that it received communications from Jin concerning this Action and quoted from its correspondence with him.  *See* Ex. 1 hereto, at 6-7.

On September 14, 2011, Christopher Brophy and Tara Lewis moved for appointment as Lead Plaintiffs and appointment of the undersigned as Lead Counsel, which motion was granted by Order entered November 1, 2011.  *See* ECF No. 80, at 3.

On September 21 and 27, 2011, Lead Plaintiffs re-served the summons and Complaint on Sung at alternative addresses, and Sung accepted service on behalf of the Company and herself.  Copies of the summons and complaint were also left with Sung for Cao and Jin.  *Id.*

On November 16, 2011, Lead Plaintiffs filed their Consolidated Amended Complaint and mailed separate copies to both Cao and Jin via UPS express mail to the business address of Jiangbo in the PRC.  Lead Plaintiffs retained a private investigator who confirmed that the

business remained active at the address.  The express mail packages containing the Consolidated Amended Complaint were accepted.  *See*  ECF No. 80, and Exhibit B thereto.

Sung, together with the successors to Jiangbo's auditor and a third party, CFO Oncall, Inc., moved to dismiss.  Lead Plaintiffs subsequently voluntarily dismissed CFO Oncall, Inc. and one of the auditor's successors.  By Order entered August 1, 2012, the Court granted the motions to dismiss filed by Sung and the other auditor successor firm, Frazer LLP.  *See* ECF No. 99.

On April 30, 2012, Lead Plaintiffs moved for an Order authorizing service on the Individual Defendants pursuant to Rule 4(f)(3).  Such motion was granted by Magistrate Judge Bandstra by Order dated May 16, 2012 (the "Rule 4(f)(3) Order"), and Sung's appeal thereof was denied by the Court on August 1, 2012.  On May 16, 2012, Lead Plaintiffs effected service on the Individual Defendants pursuant to the Rule 4(f)(3) Order.  *See* ECF No. 84.

On August 15, 2012, Lead Plaintiffs filed their Consolidated Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC").  The SAC names as defendants Jiangbo, Cao and Jin.  On the same date, Lead Plaintiffs served the Individual Defendants with the SAC pursuant to the Rule 4(f)(3) Order.  *See* ECF No. 101.

The Individual Defendants did not answer, otherwise respond, or otherwise appear in or take any action to defend this action, and on February 28, 2013 Lead Plaintiffs moved for entry of default against them, which the Clerk of Court entered on March 1, 2013.  ECF No. 120.

On March 13, 2013, an involuntary petition under Chapter 7 of Title 11, United States Code was filed against Jiangbo, to which it failed to file any pleading or defense.  *See* In re Jiangbo Pharms., Inc., No. 13-15624-RBR (Bankr. S.D. Fla.) (the "Bankruptcy Case"), ECF No. 17.  A Chapter 7 Trustee was appointed on April 17, 2013.  *See* Bankruptcy Case ECF No. 18.

In light of filing of the Bankruptcy Case, this action was stayed as to Jiangbo on May 29, 2013.  ECF No. 123.  On December 27, 2013, Lead Plaintiffs moved for relief from the automatic stay under 11 U.S.C. § 362 in order to permit them to pursue default final judgments against the Individual Defendants.  Bankruptcy Case ECF No. 87.  Such motion was granted by Agreed Order entered on August 4, 2014.  *See* Ex. 2, Bankruptcy Case ECF No. 131.

On September 18, 2014, this Court entered an Order directing the filing of this motion. ECF No. 139.  The undersigned counsel duly mailed such notice on September 24.

## ARGUMENT

I.   **ENTRY OF DEFAULT JUDGMENT AGAINST THE INDIVIDUAL DEFENDANTS IS WARRANTED**

Rule 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.  *Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co., Ltd.*, No. 1:12-CV-20626, 2012 WL 2873733 (S.D. Fla. June 29, 2012). However, before entering a default judgment, the court must "inquire as to the propriety of exercising personal jurisdiction over the absent party."  *Pawar v. Draseena Funds Grp., Corp.*, No. CIV.A. 10-2240, 2011 WL 3359679, at *1 (E.D. Pa. Aug. 4, 2011) (quotation omitted).

Additionally, prior to entering a default judgment, the district court must examine the well-pleaded allegations in the complaint to ensure that they state a substantive cause of action. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).  "If the admitted facts in the Complaint establish liability, then the Court must determine the appropriate amount of any damages, including any award of attorneys' fees and costs allowed by the applicable statutes." *Suzuki Motor Corp.*, 2012 WL 2873733, at *6.

A.      **The Individual Defendants Were**
        <u>**Properly Served and Failed to Appear**</u>

On May 16, 2012, Magistrate Judge Bandstra, issued the Rule 4(f)(3) Order, permitting service on the Individual Defendants by email, and further directing service of the complaint by express mail.  *See* ECF No. 83.  This Court affirmed the Rule 4(f)(3) Order.  *See* ECF No. 100.

After entry of the Rule 4(f)(3) Order, service was duly effected pursuant thereto, both by email and express mail, on May 16, 2012.  *See* ECF No. 84.  The SAC was subsequently duly served by email pursuant to the Rule 4(f)(3) Order on August 15, 2012.  *See* ECF No. 101.  The allegations in the SAC as to Cao and Jin are substantively identical to the allegations in the previously-filed Consolidated Amended Complaint.  *Compare* ECF Nos. 43 *and* 101.

At no time have Cao or Jin answered, otherwise responded, or otherwise appeared in or taken any action to defend this action.  Defaults were, accordingly, duly entered against the Individual Defendants on March 1, 2013.  *See* ECF No. 120.

B.      **The Court has Personal Jurisdiction**
        <u>**Over the Individual Defendants**</u>

Even when the Federal Rules of Civil Procedure authorize the use of an alternative method of service, prior to an entry of default judgment, the Due Process Clause requires an inquiry into whether that method of service is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Int'l Telemedia Associates, Inc.*, 245 B.R. 713, 721 (Bankr. N.D. Ga. 2000).  Due process can be satisfied by email service.  *See id.* at 721.

Here, due process is satisfied given that the Individual Defendants received actual notice of this action, as evidenced by (1) correspondence between Jin and National Union concerning this Action (Ex. 1, at 6-7); (2) Lead Plaintiffs' counsel's correspondence with counsel then representing Jiangbo (ECF No. 89 at 3, 12); (3) delivery of the operative complaint via express

mail on two separate occasions, in November 2011 and May 2012 (*see* ECF Nos. 80, at 3 and 84, at 1-2); and (4) delivery of the operative complaint via email that did not bounce back (*see* ECF No. 84, at 1).  *See Shamrock Navigation Corp. v. Industria Naval Do Ceara S/A*, No. 10-61886-CIV, 2012 WL 1021822, at *4 (S.D. Fla. Mar. 27, 2012) ("Defendant's due process rights were satisfied because Defendant received actual notice of the lawsuit, and it had a full fair opportunity to respond.").

     C.    <u>**Default Judgment is Warranted as to Liability**</u>

The SAC states substantive causes of action as to Exchange Act Sections 10(b) and 20(a) and Rule 10b-5 as to each Individual Defendant, warranting a default judgment as to liability.

A securities fraud claim pursuant to Section 10(b) and Rule 10b-5 has six required elements: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'"  *In re Royal Caribbean Cruises Ltd. Sec. Litig.*, 1:11-22855-CIV, 2013 WL 3295951, at *9 (S.D. Fla. Apr. 19, 2013) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

     1.    <u>**Material Misrepresentations**</u>

The SAC pled in detail Defendants' false statements regarding the Company's cash balances in periodic SEC filings.  SAC ¶ 122-152.  It further identifies Cao's individual misrepresentations concerning Jiangbo's purported strong cash position, which include his signing SEC filings and Sarbanes-Oxley certifications attesting to the accuracy and basis of the statements made, and personally affirming such balances on earnings calls with investors.  SAC ¶¶ 124, 126, 128.  In ruling on the other defendants' motions to dismiss, the Court held that Lead Plaintiffs had adequately alleged such misrepresentations.  *See* ECF No. 99, at 16-18.

The SAC further identifies Jin's individual misrepresentations concerning Jiangbo's purported strong cash position, which include his personal characterization of Jiangbo's cash position as "strong," as well as signing Class Period Forms 10-K and 10-Q, and Sarbanes-Oxley certifications attesting to the accuracy and basis of the statements made.  SAC ¶¶ 128, 130, 131, 134, 135, 141, 142, 143, 148-151.

These statements about the Company's strong cash position were false and misleading as evidenced by (1) the independent members of the Audit Committee's concern about the Company's ability to pay investigative costs, the non-payment of amounts promised, and payments made from a Jiangbo employee's personal account (SAC ¶¶ 43-45, 115); (2) the view of the independent members of the Audit Committee that some banking information supplied to it was of questionable veracity (SAC ¶¶ 43, 44, 115); (3) the Company's refusal – at the direction of Cao and Jin – to supply certain banking information (SAC ¶¶ 32-43, 115); and (4) the Company's default on debentures totaling a small percentage of the Company's declared available cash (SAC ¶¶ 46-59).  More broadly, as evidenced by the Individual Defendants abandonment of Jiangbo and obstruction of its Audit Committee, there can be little question that the Individual Defendants perpetrated a massive fraud.

2.    **Scienter**

To plead scienter under Section 10(b), a complaint must "stat[e] with particularity facts giving rise to a strong inference that each defendant acted with scienter in each act or omission alleged."  *Waterford Twp. Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*, No. 08-CIV-22572-Cooke, 2010 WL 1332574, at *13 (S.D. Fla. Mar. 30, 2010).  In the Eleventh Circuit, "the scienter required to make out a securities fraud case is intent to defraud or severe recklessness in making the allegedly materially false or misleading statements."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008).

Courts have repeatedly recognized that the size and nature of a misstatement is highly relevant to a determination of scienter for company insiders. *See Norfolk Cnty. Ret. Sys. v. Ustian*, No. 07 C 7014, 2009 WL 2386156, at *10 (N.D. Ill.  July 28, 2009) (observing that the "magnitude and nature of accounting errors may belie a defendant's claim that she or it was unaware of any improprieties").  With respect to the overstatement of cash balances, the Audit Committee's conclusion that it had "serious concerns" regarding Jiangbo's "willingness and *ability*" to pay for necessary investigative costs, and the Company's payment of advisors from a "personal bank account apparently belonging to an individual employee of Jiangbo" strongly suggest that the Company's own available cash was extremely limited, and nowhere near the $146 million claimed to be on hand as of March 31, 2011.  These conclusions are further supported by the Company's default on its relatively small obligations under the Debentures.

Additionally, courts have held that the existence of a government investigation supports an inference of fraud. *See, e.g.*, *Rosky v. Farha*, No. 07-cv-1952-T-26MAP, 2009 WL 3853592, at *7 (M.D. Fla. Mar. 30, 2009) ("the investigations into WellCare by various government agencies only serve to bolster the inference of scienter at this stage of this action").  Further, courts have repeatedly recognized that insiders' non-cooperation with an investigation into fraud further supports an inference of fraud. *See Middlesex Ret. Sys. v. Quest Software, Inc.*, 527 F. Supp. 2d 1164, 1187 (C.D. Cal. 2007) (executive's resignation and refusal to cooperate with special committee investigating wrongdoing warranted inference of scienter).  Here, Defendants Cao and Jin were repeatedly advised of their legal obligations to provide full disclosure to the Audit Committee and to provide sufficient funding to pay its advisors, yet they willfully refused to do so.  SAC ¶¶ 31-45, 195.  Finally, it is well established that flight from a jurisdiction is probative of guilt. *E.g.*, *United States v. Kennard*, 472 F.3d 851, 855 (11th Cir. 2006) ("evidence

of flight [was] admissible and probative" in investment fraud prosecution; "[a]s for the evidence being prejudicial, the idea seems to be that it was truly prejudicial because it made Abraham look so guilty. Of course it did."); *United States v. Blakey*, 960 F.2d 996, 1000 (11th Cir. 1992) (in bank fraud prosecution, "[e]vidence of flight [was] admissible to demonstrate consciousness of guilt and thereby guilt"). The Individual Defendants' abandonment of the U.S. legal and financial obligations and default in this action are likewise probative of their guilt.

### 3.   <u>Reliance</u>

The U.S. Supreme Court has endorsed the "fraud-on-the-market" theory, "which permits certain Rule 10b–5 plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1192 (2013). The fraud-on-the-market theory "facilitates class certification by recognizing a rebuttable presumption of classwide reliance on public, material misrepresentations when shares are traded in an efficient market." *Id.* at 1193. As discussed below in Point II.B.1 (at 17), Jiangbo securities traded in an efficient market during the Class Period, availing Lead Plaintiffs of the fraud-on-the-market theory to show reliance.

### 4.   <u>Loss Causation</u>

To show loss causation, the plaintiff must offer "proof of a causal connection between the misrepresentation and the investment's subsequent decline in value." *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 725 (11th Cir. 2012). Loss causation does not require proof that the fraud – or, more precisely, the dissipation of the fraud-induced inflation – was the sole cause of the security's decline in value, just that it was a "substantial" or "significant contributing cause." *Id.* (citing *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448 (11th Cir. 1997)).

Here, the allegations in the SAC support the conclusion that Jiangbo shares were substantially worthless by mid-March 2011, 2½ months before trading in Jiangbo's stock was

halted, at a time when Jiangbo had defaulted on payments to its debenture holders (*see* SAC ¶¶ 56-57).  Accordingly, the subsequent decline in the value of Jiangbo's shares during the Class Period is properly attributable to gradual revelation of the truth to the market.  *See Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010).  *Accord In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1370 (N.D. Ga. 2010).  *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at \*15 (S.D. Fla. Apr. 25, 2011) (adopting the "materialization of the risk" theory of loss causation).

In sum, Lead Plaintiffs have demonstrated sufficient facts to establish liability for securities fraud under Section 10(b) and Rule 10b–5.

### 5.     <u>Control Person Liability</u>

To state a claim for control person liability under Section 20(a) the plaintiff must allege that the defendant had (1) the power to control the general affairs of the entity primarily liable for the Section 10(b) or Rule 10b–5 violation at the time of the violation, and (2) the power to control or influence the specific policy that resulted in the primary violation under Section 10(b) or Rule 10b–5.  *Schultz v. Applica Inc*., 488 F. Supp. 2d 1219, 1230 (S.D. Fla. 2007).

Here, the SAC alleges at length the controlling roles of Cao and Jin as Chairman and CEO of Jiangbo, respectively, as signatories of various SEC filings, and as direct participants on earnings calls with investors during the Class Period.  *See* SAC ¶¶ 69, 70.  These allegations are sufficient to support control person liability.  *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 262 (S.D.N.Y. 2005); *In re JDN Realty Corp. Sec. Litig.*, 182 F. Supp. 2d 1230, 1246 (N.D. Ga. 2002).

D.      **Determination of Damages**

1.      **Standard**

Damages on a motion for default judgment must be established with "reasonable certainty." *Due Process, Ltd. v. Alternative Debt Servs., Inc.*, No. 3:03CV580/MCR/MD, 2007 WL 1428661, at *3 (N.D. Fla. May 14, 2007); *United States v. APS Contracting, Inc.*, No. CIV. 11-779-KMW, 2013 WL 3465192, at *1 (D.N.J. July 10, 2013) (legal standard on motion for default judgment is that the "Plaintiff must show proof of the amount of damages to a reasonable degree of certainty") (quotation omitted).

2.      **Damages Calculation**

Lead Plaintiffs' methodology for calculating damages is set forth in the expert report of their economics expert, Cynthia L. Jones, CFA ("Jones"). As detailed in her report (the "Jones Report"), Ex. 3 hereto, *see* ¶¶ 44-54, Lead Plaintiffs' expert calculated an amount of damages per share and then calculated the number of shares belonging to members of the Class using a multi-trader trading model. Through this methodology, Plaintiff's expert calculated total Class damages as $27,472,498.

In another securities fraud case involving the default by PRC-based defendants, *In re Longtop Financial Technologies Limited Securities Litigation*, No. 11-cv-3658-SAS (S.D.N.Y.), the District Court recently approved entry of a default judgment in the amount of $882 million based on the same overall methodology. *See* Ex. 4 (*Longtop* judgment); *Longtop* ECF No. 163 Ex. H (expert report).

In addition, Lead Plaintiffs are entitled to an award of prejudgment interest, and seek prejudgment interest at the Florida statutory rate. *See Salam Jeans Ltd. v. Regions Bank*, No. 07-21603-CIV, 2010 WL 1223778 (S.D. Fla. Mar. 29, 2010).

### 3.    Evidentiary Hearing On Damages is Not Required

Rule 55 provides that a court "may conduct hearings" when, to enter or effectuate a judgment, it needs to determine the amount of damages.  Fed. R. Civ. P. 55(b)(2)(B).  A hearing, however, is discretionary; the court may determine that a hearing is not necessary upon submission of evidence to support the request for damages.  *See Taverna Opa Trademark Corp. v. Ismail*, No. 08-20776-CIV, 2010 WL 1838384, at *2 (S.D. Fla. May 6, 2010) ("While Federal Rule of Civil Procedure 55(b)(2)(b) permits the Court to conduct hearings on a default judgment, an evidentiary hearing is not necessary if the plaintiff submits sufficient evidence to support the request for damages.") (citing *SEC v. Smyth,* 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005)); *Suzuki Motor Corp. v. Jiujiang Hison Motor Boat Mfg. Co., Ltd.*, No. 1:12-CV-20626, 2012 WL 2873733, at *6 (S.D. Fla. June 29, 2012) (dispensing with evidentiary hearing where "all the essential evidence is on record").

In *Longtop*, the Court accepted the expert damages report and granted the plaintiffs' motion for default judgment without a hearing.  *See Longtop* ECF Nos. 161-64 (reflecting absence of a hearing between filing and granting of plaintiffs' motion for default judgment).

Lead Plaintiffs submit that the evidence of damages presented in the Jones Report is sufficient to support the damages award, and that no hearing is required.

## II.    CERTIFICATION OF THE CLASS FOR PURPOSES OF DEFAULT JUDGMENT ONLY IS WARRANTED

Courts routinely certify securities fraud actions such as this one, which are well-suited for class treatment under Rule 23.  *See Cheney v. Cyberguard  Corp*., 213 F.R.D. 484, 489 (S.D. Fla. 2003) (class actions are "a particularly appropriate means for resolving securities fraud actions").  Moreover, "the interests of justice require that in a doubtful case . . . any error, if there is to be one should be committed in favor of allowing a class action."  *Id.* at 489.

- 13 -

As demonstrated herein, this action meets the requirements of Rule 23 as well as Eleventh Circuit law for certifying a class.  Certification of the Class is a prerequisite to entry of a default judgment as to the Individual Defendants.  *See Brown v. City of Detroit*, No. 10-12162, 2012 WL 4470433, at *8 (E.D. Mich. Sept. 27, 2012) ("Two primary issues are now before the Court. First, is Plaintiff entitled to class certification? And second, is Defendant in default as to the entire class?  These two questions must be addressed in this order because absent class certification, no default as to the (nonexistent) class can be made.").  *See also Katz v. MRT Holdings, LLC*, No. 07-61438-CIV, 2008 WL 4725284, at *2 (S.D. Fla. Oct. 24, 2008) (defendants' default did not eliminate burden of establishing entitlement to class certification).

Rule 23(a) establishes four prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, Lead Plaintiffs are seeking certification of a Class under Rule 23(b)(3), which also requires that: (1) questions of law or fact common to the class predominate over individual questions; and (2) the class action device is superior to all other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

The "Class" here is defined as follows:

All persons who purchased or otherwise acquired Jiangbo's securities on the open market between June 8, 2010, and May 31, 2011, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

A.    **The Proposed Class Action Satisfies
      the Requirements of Rule 23(a)**

1.    **Numerosity**

In light of the millions of Jiangbo shares trading on the NASDAQ during the Class Period, *see* SAC ¶ 166, the numerosity requirement is satisfied. *See In re Physician Corp. of Am. Sec. Litig.*, No. 97-3678-CIV, 2003 WL 25820056, at *4 (S.D. Fla. May 21, 2003).

2.    **Commonality**

If a class has "at least one issue affecting all or a significant number of proposed class members, then the requirement of commonality is met." *Id.*  As such, "[c]ommonality is not a high threshold to meet." *Id.*  "When a plaintiff alleges that there is a common scheme of deceptive conduct to defraud investors, the issue affects all class members, and the commonality requirement is satisfied." *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 618 (M.D. Fla. 2006). Here, among the questions common to the Class are whether statements made by Jiangbo and the Individual Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, finances, internal controls, operations, prospects of the Company, and whether the price of Jiangbo's securities was artificially inflated during the Class Period.  *See* SAC ¶ 169.

3.    **Typicality**

Typicality is satisfied even where there exists some factual differences between the claims of the representative and the class at large, so long as there is a strong similarity of legal theories.  *See Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir. 1985).  Where "both the named representatives and the putative class members were alleged victims of uniform misrepresentations and omissions by Defendants, typicality cannot be a hurdle to certification." *Bacon v. Stiefel Laboratories, Inc.*, 275 F.R.D. 681, 692 (S.D. Fla. 2011).  Here, Lead Plaintiffs,

as proposed Class representatives, satisfy this requirement because, like all other Class members, they: (1) purchased Jiangbo common stock at prices artificially inflated as a result of the allegedly materially false and misleading statements issued by defendants; and (2) suffered damages thereby.  *See* ECF Nos. 14-2, 14-3 (Brophy and Lewis lead plaintiff certifications).

### 4.   **Adequacy**

In determining whether the named plaintiffs will adequately protect the interest of the class, a court should examine whether (1) plaintiffs have interests antagonistic to those of the rest of the class and (2) plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation.  *Cheney*, 213 F.R.D. at 495.

Here, there is no suggestion of antagonism between the Lead Plaintiffs and other Class members.  Mr. Brophy and Ms. Lewis purchased Jiangbo stock during the Class Period on the open market while its price was inflated and suffered respective losses of $215,629 and $77,829. *See* ECF No. 14-4.  Their interests are therefore aligned with those of other Class members.

The Lead Plaintiffs have also retained selected law firms that are highly experienced in prosecuting securities class actions to represent them and the Class.  *See Cheney*, 213 F.R.D. at 495 (finding counsel adequate where the attorneys had "significant experience in federal securities class actions").  Milberg has served as lead or co-lead counsel in many high-profile class actions, and has recovered billions of dollars for investors; Wohl & Fruchter focuses on the representation of plaintiffs in securities and other complex litigation, and its managing partner, Ethan Wohl, has litigated numerous securities class actions to successful resolution.  *See* ECF Nos. 14-6, 14-7 (firm resumes).

**B.     The Proposed Class Action Satisfies
        the Requirements of Rule 23(b)(3)**

Lead Plaintiffs seek certification under Rule 23(b)(3), and so must demonstrate that (1)

questions of law or fact common to the members of the class predominate over those questions

affecting individual members only, and (2) a class action is superior to other available methods

for fair and efficient adjudication of the case.  Fed R. Civ. P. 23; *Cheney*, 213 F.R.D. at 496.

**1.     Predominance**

Due to the abundance of common issues, "[p]redominance is a test readily met in certain

cases alleging . . . securities fraud."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Under the fraud-on-the-market theory adopted by the U.S. Supreme Court in *Basic, Inc. v.

Levinson*, 485 U.S. 224, 227 (1988), class-wide reliance is *presumed*, and individual issues of

reliance do not predominate, in actions where a company's stock is traded on an open, developed

and efficient market.

The Eleventh Circuit recently confirmed that the factors set forth in *Cammer v. Bloom*,

711 F. Supp. 1264 (D.N.J. 1989), could properly be used to evaluate market efficiency,

explaining that "[i]t is up to the District Courts to consider the nature of the market on a case-by-

case basis to decide whether the totality of the circumstances supports a finding of market

efficiency."  *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin.

Corp.*, ___ F.3d ___, 2014 WL 3844070, at *4 (11th Cir. Aug. 6, 2014).

The *Cammer* factors are:

(1) high average trading volume during the class period; (2) a significant number
of analysts following the stock; (3) numerous market makers who react quickly
to, and trade based upon, new information about the company; (4) entitlement to
file a Securities and Exchange Commission (SEC) Form S–3, which has
minimum stock and trading requirements; and (5) empirical facts showing a cause
and effect relationship between unexpected corporate events and an immediate
response in the stock price.

*Id.* at *3 n.2.

Further, several courts including those in this District have applied additional factors, including "(1) the capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock not held by insiders (the 'float')." *Cheney*, 213 F.R.D. at 498. "A plaintiff is not required to show the existence of each of these factors." *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 683 (N.D. Ala. 2005).

Here, the factors listed above support the conclusion that Jiangbo common stock traded in an efficient market. These factors are analyzed in the Jones Report submitted herewith, Ex. 3. As set forth in the Jones Report: (1) the weekly trading volume during the Class Period, even if conservatively discounted for NASDAQ volume overstatement, averaged 0.98%, supporting a "substantial presumption" of market efficiency (Jones Report ¶¶ 21-22); (2) there were 17 market makers with at least 1% of JGBO's trading volume during the Class Period, a number slightly higher than the average for NASDAQ-traded companies and significantly more than then ten that *Cammer* suggested would support a "substantial presumption" of efficiency (*id.* ¶¶ 26-27); (3) Jiangbo had a substantial market capitalization during the Class Period, of $43 to $127 million (*id.* ¶ 29); (4) a majority of Jiangbo's shares during the Class Period (61.3% on average) were widely-held, including by institutional holders (*id.* ¶¶ 30-31); (5) Jiangbo's bid-ask spread was less than 1% and consistent with the bid-ask spreads of similarly-sized companies (*id.* ¶¶ 32-34), and (6) an event study analysis shows a rapid response in Jiangbo's market price to new, relevant information (*id.* ¶¶ 35-43).

With respect to the two remaining factors, (i) Jones concluded that the absence of security analyst coverage weighs against a finding of efficiency, but that other internet-based channels of investor information regarding Jiangbo did exist (*id.* ¶¶ 23-25), and (ii) Jiangbo did

- 18 -

not file any registration statements during the Class Period, and Jones was not qualified to offer

an opinion whether the SEC would have deemed Jiangbo qualified to file on Form S-3 (*id.* ¶ 28).

Based on these considerations, Jones concluded that the evidence collectively supports a

finding that the market for JGBO common stock was efficient during the Class Period. *Id.* ¶ 7.

Accordingly, the fraud-on-the-market theory applies, and common issues of the Class

members predominate over any individual factual questions.

                2.      **Superiority**

Lead Plaintiffs believe there are hundreds or thousands of members of the proposed

Class.  SAC ¶ 166.  Accordingly, individual actions would be prohibitively costly.  *See Cheney*,

213 F.R.D. at 502.  This is particularly true in light of the challenges of collection here.

In sum, this action meets the requirements for certifying the Class under Rule 23.

**III.**      **APPROVAL OF THE COLLECTION AGREEMENT IS WARRANTED**

To achieve a recovery on the default judgments sought hereby, Lead Plaintiffs will be

required to proceed against the Individual Defendants in China.  To pursue collection efforts,

Lead Plaintiffs have entered into the Collection Agreement annexed hereto as Exhibit 5.

The collection agent under the Collection Agreement is Mr. Yongji Duan ("Duan").

Duan is Chairman of the board of directors of Stone Group, a leading privately-held Chinese

technology company.  He served on the board of directors of SINA Corporation (NASDAQ:

SINA), a large Chinese online media company, from 2003 to 2008, and was a member of the 8th

and 9th sessions of the National Committee of the Chinese People's Political Consultative

Conference (CPPCC), from 1993 to 2003.  Publicly-reported information regarding Duan is set

forth in Exhibits 6 and 7 hereto.

The Collection Agreement is subject to approval by the Court (Collection Agreement ¶

7), and provides that Duan, as collection agent, will use commercially reasonable efforts to

collect the default judgment entered against Cao outside of the United States, and must comply with all applicable laws in the conduct of collection efforts under the Agreement. *Id.* ¶¶ 1, 4.

The Collection Agreement provides for a 50% collection commission to Duan, in recognition of the difficulties associated with collecting an overseas judgment and the uncertainties of collecting in this matter.

While we are not aware of a specific requirement that Lead Counsel obtain approval of agreements of this type, we believe that seeking Court approval is appropriate in light of the Court's overall responsibility of supervising the conduct of class actions. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1102 (5th Cir. 1977) ("Rule 23(d) vests the district court, as manager of the class action, with the appropriate authority to enter whatever orders are necessary to the conduct of the action").

Under the circumstances here, we submit that approval of the Collection Agreement, which was negotiated at arm's length by the undersigned Lead Counsel, is warranted. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (in evaluating settlement, the court "will not substitute its business judgment for that of the parties").

## **CONCLUSION**

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter an Order and a Judgment in the forms submitted herewith.

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that I made reasonable efforts to confer with all parties and non-parties who may be affected by the relief sought by this motion. Specifically, I contacted Defendants Cao and Jin via email and they did not respond.

Dated: September 26, 2014                    Respectfully submitted,

Ethan D. Wohl
(Florida Bar No. 982210)
**WOHL & FRUCHTER LLP**
570 Lexington Avenue, 16th Floor
New York, NY  10022
Telephone:  (212) 758-4000
Facsimile:  (212) 758-4004
E-mail:  ewohl@wohlfructer.com

Kristi Stahnke McGregor
(Florida Bar No. 0732931)
**MILBERG LLP**
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
E-mail:  kmcgregor@milberg.com

*Attorneys for Lead Plaintiffs and the Proposed
Class*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Lead Plaintiffs'

Motion for Class Certification, Default Judgment and Approval of Collection Agreement, with

Incorporated Memorandum of Law was served

(i) via electronic filing with the Clerk of the Court via CM/ECF this 26th day of

September, 2014, which will send a notice of filing to the following parties:

Tracy Nichols
(Fla. Bar No.: 454567)
tracy.nichols@hklaw.com
Louise McAlpin
(Fla. Bar No.: 983810)
louise.mcalpin@hklaw.com
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3000
Miami, FL 33131
Tel. (305) 374-8500
Fax. (305) 789-7799

*Attorneys for Defendant Elsa Sung*

Blake Sando
(Fla. Bar No.: 939293)
blake.sando@csklegal.com
COLE, SCOTT & KISSANE, P.A.
9150 S. Dadeland Boulevard, Suite 1400
Miami, FL 3316
Tel. (305) 350-5365
Fax (305) 373-2294

*Attorneys for Defendant Frazer, LLP*

(ii) via email on Defendants Wubo Cao and Linxian Jin pursuant to the Order on Motion

to Authorize Service Pursuant to Federal Rule of Civil Procedure 4(f)(3), entered May 16, 2012.

Dated: September 26, 2014

_____
ETHAN D. WOHL